Elgin Gregory KING *v.* STATE of Arkansas

CR 98-1452 999 S.W.2d 183

Supreme Court of Arkansas
Opinion delivered September 23, 1999

*John Stratford*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

L AVENSKI R. SMITH, Justice. Elgin King appeals his second conviction for the first-degree murder of Willie Simpkins from Pulaski County Circuit Court. Appellant was originally charged by felony information with capital murder and tried by jury. The jury found Simpkins guilty of the lesser included offense of first-degree murder and sentenced him to forty years. On appeal, this court reversed the trial court for failure to instruct the jury on witness Vernon Scott as a possible accomplice.

In Appellant's second trial the prosecution sought to prove first-degree murder. The jury, once again, found Simpkins guilty but this time sentenced him to sixty years. On this appeal, we have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(7). *See King v. State,* 323 Ark. 671, 916 S.W.2d 732 (1996) (*King I*). Appellant asserts three errors by the trial court in this second appeal. First, insufficiency of the evidence; second, failure to declare a witness an accomplice as a matter of law; and, third, admission of evidence of appellant's gang involvement. None of appellant's assertions have merit and we therefore affirm.

## Facts

On October 4, 1993, North Little Rock police discovered the body of an adult male in a silo just south of an area called the "Dixie Addition" of that city. Police recovered a rubber mask from the scene. The victim had suffered multiple gunshot wounds. Earlier in the day, a Mrs. Simpkins from Dixie Addition had reported her son missing. Based upon fingerprint records, the authorities identified the body to be that of Willie Simpkins. In the course of their investigation, police interviewed Vernon Scott also of the Dixie Addition. Over the course of several visits, Scott told police that on September 30, 1993, he had been asked by Kenneth Slocum to get Willie Simpkins to go to the Hattison home so Slocum could talk to Simpkins. Scott agreed and brought Simpkins to the designated meeting place. Sometime after Scott and Simpkins arrived at the Hattison home, Elgin King and Kenneth Slocum entered the home armed with handguns. According to Scott, King wore a rubber mask and Slocum wore a ski mask. Scott recognized them by their clothing and by their voices with which he was familiar. King and Slocum covered Simpkins's head and bound him with duct tape. King went out the front door and Slocum took Simpkins out the side door. A few minutes later, Scott, while out on the street, heard multiple gunshots. Mr. Simpkins was not seen alive again.

## Sufficiency of the Evidence

For his first point on appeal, Appellant contends the evidence was insufficient to justify conviction for first-degree

murder. We consider sufficiency of the evidence before addressing other alleged trial errors. *Williams v. State*, 338 Ark. 97, 106 (1999). We do so in order to preserve a defendant's right to freedom from double jeopardy. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997); *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997); *Burris v. State*, 330 Ark. 66, 70, 954 S.W.2d 209 (1997). Appellant moved for directed verdict at the close of the state's case and then at the close of his case. Ordinarily, this would be sufficient to preserve the issue of sufficiency of the evidence for appellate purposes. However, as the State points out, Appellant failed to renew the directed-verdict motion after the State's rebuttal testimony. The State argues that appellant thus failed to preserve the issue. We agree.

 Our procedure rules require that a motion for a directed verdict be brought at the "conclusion of the evidence presented by the prosecution and again at the close of the case. . . ." Ark. R. Crim. P. 33.1. Close of the case means close of the whole case, in other words, after the last piece of evidence has been received. As we stated in *Rankin, supra*, "Even if a defendant renews his motion at the close of his case-in-chief, the requirement of the rule to renew the motion at the "close of the case" obligates the defendant to renew the motion again at the close of any rebuttal case that the State may present in order to preserve the sufficiency issue for appeal." See also, *Heard v. State*, 322 Ark. 553, 57, 910 S.W.2d 663 (1995) [overruled on other grounds in *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998)]; *Christian v. State*, 318 Ark. 813, 889 S.W.2d 717 (1994).

 A review of the record reveals Appellant did not move for a directed verdict after the State's rebuttal testimony. The Appellant closed his case when witness Lewis "Hatbox" Hattison could not be located and brought to the courtroom to testify. The Appellant then moved for a directed verdict based on insufficiency of the evidence. The State then called police Sgt. Mike Davis back to the stand as a rebuttal witness. Mr. Davis testified that Appellant was a member of the "Dixie Dog Pound," the only gang in the Dixie Addition. The Appellant indicated he had no surrebuttal testimony to offer and the court began jury instruction. Hence, appellant made no motion for directed verdict at the

close of the whole case. This court has repeatedly and emphatically held that, in order to preserve for appeal the issue of the sufficiency of the evidence in a criminal case, the appellant must move for a directed verdict both at the close of the State's case and at the close of the whole case. *Hayes v. State*, 312 Ark. 349, 849 S.W.2d 501 (1993); *Collins v. State*, 308 Ark. 536, 826 S.W.2d 231 (1992); *DeWitt v. State*, 306 Ark. 559, 815 S.W.2d 942 (1991); *Thomas v. State*, 315 Ark. 504, 868 S.W.2d 483 (1994). We hold Appellant failed to preserve the question of sufficiency of the evidence by failing to move for a directed verdict after the State's rebuttal testimony.

*Accomplice as a Matter of Law*

For his second point on appeal, Appellant contends the trial court erred in refusing to find Vernon Scott to be an accomplice as a matter of law. We considered and decided this identical issue in Appellant's prior appeal (*King I*). We held that the trial court correctly refused to declare Scott an accomplice as a matter of law. *King, supra*. However, we remanded the case to the trial court in order for the trial court to submit the accomplice issue to the jury. In Appellant's second trial, the jury considered whether Scott was an accomplice. The jury decided that Scott was not an accomplice. Appellant does not argue in his brief that new or different facts were adduced at the second trial. The State contends the issue was resolved in the first appeal and that the law-of-the-case doctrine precludes any further consideration. We agree.

■ ■ We recently reiterated the considerations for the doctrine's application in *Camargo v. State*, 337 Ark. 105 (1999). In Camargo we stated,

> The law-of-the-case doctrine ordinarily arises in the case of a second appeal and requires that matters decided in the first appeal be considered concluded. The doctrine is not inflexible and does not absolutely preclude correction of error, but it prevents an issue raised in the prior appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. The doctrine precludes the trial court on remand from considering and deciding questions that were explicitly or *implicitly* determined on appeal. Questions that have not been decided

> do not become law of the case merely because they could have been decided; at the same time, however, law-of-the-case principles are applied when a court concludes that an issue was resolved implicitly despite the lack of any explicit statement. Significantly the doctrine extends to issues of constitutional law. (Citations omitted.)

We have also recently noted that the appellant bears the burden of proving that a witness is an accomplice whose testimony must be corroborated. *Lloyd v. State*, 332 Ark. 1, 962 S.W.2d 365 (1998). A defendant must either have the trial court declare a witness to be an accomplice as a matter of law or submit the issue to the jury for determination. *McGehee v. State*, 338 Ark. 152 (1999).

In *King I* we held, "The facts do not show conclusively that Scott was an accomplice. The trial court was correct in refusing to declare him an accomplice as a matter of law. . . ." *King, supra.* On remand, the trial court submitted the accomplice question to the jury with appropriate instructions. The jury declined to answer in Appellant's favor. Appellant does not assert that the evidence in the second trial varied materially from the evidence in the first trial. Therefore, the law-of-the-case doctrine precludes consideration of this issue on his second appeal.

### Gang-Related Testimony

For his third and final point on appeal, Appellant contends the trial court abused its discretion in allowing testimony of Officer Mike Davis that Appellant belonged to the Dixie Dog Pound gang. Appellant objected on grounds of relevance and undue prejudice. Relevancy determinations are within the sound discretion of the trial court subject to reversal only if that discretion is abused. *TB of Blytheville, Inc. v. Little Rock Sign & Emblem, Inc.* 328 Ark. 688, 946 S.W.2d 930 (1997) *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998). Additionally, prejudice, which is not presumed, must be shown or the trial court's ruling will not be reversed. *Wallace v. State* 314 Ark. 247, 862 S.W.2d 235 (1993); *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996).

Although the record does not directly reflect it, the parties agree that the trial court granted a motion in limine to exclude

evidence of gang activity. The pertinent, objected to testimony appears below:

> OFFICER DAVIS *testified*:
>
> Q And were you aware of any gang or street gangs in the Dixie Addition area based upon your experience?
>
> A Yes, Sir. There is one gang in Dixie.
>
> Q Okay. And, Sargent Davis, do you know whether or not this defendant, Mr. Elgin King, is in a gang?
>
> A Yes, sir, I do.
>
> Q Okay.
>
> A He is.
>
> Q And which gang is that?
>
> A The Dixie Dog Pound. [TR 392-393.]

The State elicited this limited testimony that Appellant belonged to the Dixie Dog Pound gang pursuant to direction given by the trial court. After long discussion between the trial court and counsel, the court concluded that this limited testimony was admissible to rebut evidence offered by Appellant. Earlier, Appellant's witness, Dewayne Turner, testified that State's witness Dana Thrash had lied. Turner testified that Thrash was not assaulted in jail at Appellant's behest, but because Thrash was "throwing up" gang signs. In the State's case in chief, witness Thrash testified that Appellant approached him in jail with an offer. Specifically, that if he "took out" a witness, Appellant would help him get out of jail on bond. Thrash testified that he did not agree, and that later someone attacked him. Appellant, in his defense case, put on Dewayne Turner to provide evidence that Thrash had made up the story about Appellant approaching him, that Thrash had rehearsed the story in front of Turner, and that Thrash concocted it to deceive the authorities and gain an early release. The trial judge found Turner's testimony opened the door to limited testimony about gang involvement because it implied Appellant was not involved in the assault by positing that a gang had done it for an unrelated reason. The trial court also noted Thrash's credibility had been attacked by Appellant with testimony by Turner that he was in a gang. The trial court stated,

"Yeah, I just think they've opened it by saying that this is gang activity and has nothing to do with this defendant, I think you can show this defendant's a member of a gang, and it could very well have been related to that." So Appellant's gang membership then became admissible.

■■ When a defendant opens the door to issues of character, the State is entitled to rebut those issues of character. *Friend v. State*, 315 Ark. 143, 865 S.W.2d 275 (1993). As a consequence, the State introduced and the court admitted evidence that Appellant was a gang member. The State sought to expand the testimony. However, the trial court correctly restricted the rebuttal testimony to merely stating that Appellant was a gang member so as to limit it to rebutting Turner's testimony. We have long recognized the propriety of "fighting fire with fire" when one of the parties opens the door with an untruthful statement, introduces inadmissible evidence, or makes an improper closing argument. *See Porter v. State*, 308 Ark. 137, 823 S.W.2d 846 (1992); *Wortman v. Shipman*, 293 Ark. 253, 737 S.W.2d 438 (1987); *Pursley v. Price*, 283 Ark. 33, 670 S.W.2d 448 (1984); *Larimore v. State*, 317 Ark. 111, 121, 877 S.W.2d 570 (1994). Moreover, an appellant generally can't complain when he is the one who originally elicited the objectionable testimony. *Hicks v. State*, 327 Ark. 652, 664, 941 S.W.2d 387 (1997).

■ In the instant case, Appellant apparently put Turner on the stand unaware he might raise the issue of gangs. However, Turner was Appellant's witness, and therefore Appellant broached the subject of gangs. The trial court limited the rebuttal testimony of Officer Davis to match what had been brought out by Appellant. Turner testified that Thrash belonged to the Piru gang, from which the jury might infer the prison assault on Thrash was by a gang and did not involve Appellant. Officer Davis testified that Appellant belonged to the Dixie Dog Pound gang, allowing the jury to infer the assault conceivably could have involved Appellant. Based on the foregoing, we hold the trial judge did not abuse his discretion in admitting limited testimony of Appellant's gang membership.

Affirmed.