Julian Robert PROCTOR *v.* STATE of Arkansas

CA CR 00-779                                    60 S.W.3d 486

Court of Appeals of Arkansas
Divisions III, IV, and I
Opinion delivered November 28, 2001
[Petition for rehearing denied January 9, 2002.]

*William C. McArthur,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Leslie Fisken,* Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Julian Proctor appeals from his convictions for first-degree attempted murder, and first-degree attempted kidnapping.[1] He argues that his Sixth

---

[1] Appellant was also convicted of first-degree terroristic threatening, second-degree stalking, burglary, and third-degree battery. He does not appeal from these convictions. First, he does not discuss the burglary and third-degree battery convictions in his argument. Second, while he enumerates his convictions for first-degree murder, first-degree attempted

Amendment Confrontation right was violated when the trial court allowed the arresting officer's testimony from a bond-revocation hearing in a separate case to be read to the jury during trial in this case. He also argues that the evidence was insufficient to sustain his convictions. Because we agree that the trial court erred in admitting the officer's testimony, we reverse and remand for a new trial.

Appellant was charged following an incident that occurred on November 29, 1998, when he allegedly broke into the home of his former girlfriend, Melissa Mahan. At that time, appellant had been released on bond in an unrelated case. On December 8, 1998, the trial court held a hearing to revoke appellant's bond in the other case. The court was informed that appellant's counsel for the bond hearing would not represent him with regard to the unrelated charges that are the subject of this appeal. At the bond hearing, the State sought to introduce the testimony of Bart Puckett, the arresting officer in the instant case. Appellant objected that the testimony was hearsay. The trial court overruled appellant's objection on the ground that the testimony was for the purposes of the bond hearing.

Puckett testified at the bond revocation hearing that on November 29, 1998, he had been assigned "extra patrol" for Mahan's residence because of prior problems between Mahan and appellant.[2] As Puckett passed by Mahan's house at about 10:00 a.m., he noticed that her driver's side car door was open, and that her son was in the back seat of the car on the passenger side. Mahan's son, Robert, told Puckett that appellant was in the house.

Puckett drove into the driveway and got out of his vehicle. Appellant met Puckett on the front steps. Puckett asked appellant to step into the yard and asked why appellant was there. Appellant insisted that he wanted to talk to Mahan. Puckett asked him if he

---

kidnapping, first-degree terroristic threatening, and second-degree stalking in his argument, he limits his argument on appeal to the State's alleged failure to present sufficient evidence to support that he took the substantial steps necessary to support his convictions for attempted first-degree murder and attempted first-degree kidnapping. Arguments not raised on appeal are deemed waived. *See King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996). Therefore, because appellant presents no argument with regard to his convictions for first-degree terroristic threatening, second-degree stalking, burglary, and third-degree battery, he is deemed to have waived his arguments with respect to these convictions on appeal.

[2] Both had been previously charged with domestic battery against each other, and Mahan testified that appellant had previously broken into her home, requiring her to have her locks changed.

realized that he entered her house unlawfully and committed burglary. Puckett testified that appellant responded affirmatively. Officer James Abbey, who had arrived to assist Puckett, read appellant his *Miranda* rights, and arrested appellant. Upon seeing a large bulge in appellant's pocket, Puckett patted down appellant and seized duct tape, brown fleece gloves, a sheath knife with a six-inch blade, handcuffs, a pair of pliers, a leatherman's type tool, and a mini-flashlight. Appellant's car was parked two blocks away. When another officer went to appellant's car to obtain his billfold, the officer found a Wal-Mart receipt for duct tape, a nylon rope, a flashlight, and pliers.

Puckett testified that after appellant was taken back to the police station and was again read his *Miranda* rights, he told Puckett that he broke into Mahan's home by climbing on her roof and entering through the attic. According to Puckett, appellant further confessed that he entered her home with the intent to tie her up, kill her, and then kill himself. Puckett admitted that he did not record appellant's confession and that he did not take any written notes. However, he stated that he wrote his report, which included appellant's statement, within fifteen minutes after appellant gave his statement.

Puckett was out of the country serving in the military when appellant was brought to trial on the charges related to this appeal. Consequently, the State sought to introduce his bond hearing testimony at appellant's criminal trial. The State filed a motion *in limine* requesting the trial court to issue a ruling regarding whether Puckett's testimony was admissible at trial. The attorney who represented appellant at the bond revocation hearing did not represent appellant at trial. Appellant objected to the motion, noting that he had objected at the bond hearing on the grounds that it was hearsay. He further argued that to allow such testimony would violate his Sixth Amendment right to confront the witness against him; that his prior counsel did not know at the time of the bond revocation hearing that Puckett had attempted to date Mahan; and that he would suffer prejudice because he would be denied his right to fully cross-examine Puckett and because the statements he allegedly made would cause a jury to convict him for the "wrong reasons."

The pretrial hearing was conducted on September 27, 1999. Mahan testified that after a stormy two-year relationship involving incidences of violence by both parties, she and appellant stopped seeing each other on November 15th. She further testified that Puckett had responded to one call prior to the incident in this case

when appellant had shown up at her house unexpectedly. She stated that the next day after that incident, Puckett checked on her and invited her to lunch, but she declined. Mahan further stated that Puckett and the police department continued to provide her with "additional patrols" during the next few weeks. She admitted that she and Puckett had Thanksgiving at her parent's house shortly before the incident in this case.

The day before the incident, appellant phoned Mahan and told her that he was coming over and wanted to talk. She told him they had nothing to discuss and that she would leave. She spent that night at her parents. When she returned home the next day, she noticed that her front door was unlocked and her bedroom light was on. She heard a "thump," which she guessed was the closing of the attic door that led to her bedroom. She told her son to go back to the car. She yelled at appellant that she knew he was in there and that she was going to call the police.

Mahan stated that appellant came into the living room and pleaded with her to talk to him. She told him there was nothing to talk about and walked out to her car, but then returned to her house. She said that she stood in the doorway of the house and that appellant sat in a chair on the other side of the living room pleading with her. She then saw a police officer in front of the house and she and appellant went outside. Mahan stated that Puckett asked appellant if he knew that he was not supposed to be there and that he could be arrested for trespassing, and appellant responded, "Yes." She indicated to the officers that she did not want them to arrest appellant, but asked them to tell him not to come back. She further testified that appellant did not threaten her with a knife or threaten her in any way, and that she did not know that he had those items on his person.

Officer Dave Berry read Puckett's testimony from the bond revocation hearing into the record. Appellant objected that appellant's statements that he made prior to being Mirandized were inadmissible. The court ruled that appellant volunteered the information regarding why he was at Mahan's. Appellant objected to the transcript of Puckett's testimony being published to the jury. The court admitted it into evidence, but did not publish it to the jury.

Berry also testified that Mahan informed him approximately two or three weeks after the incident that Puckett had asked her for a date. He stated that he reported this to his supervisor, and that it

was unusual to have an officer in charge of an investigation also trying to date the alleged victim.

Appellant then moved for a directed verdict, asserting that the State failed to meet its burden on each element of each charge, specifically the domestic-battery charge. He also asserted that there was no substantial step to substantiate either of the attempt charges, because Mahan testified that he did not threaten her. The motion was denied. A jury found appellant guilty on all charges and sentenced him to serve thirty-five years on the attempted murder and attempted kidnapping charges.[3]

### Admission of Puckett's
### Bond Revocation Testimony

Appellant argues that the trial court erred in admitting Puckett's bond-revocation hearing testimony at trial in violation of his Sixth Amendment right to confront the witnesses against him.[4] We agree.

Arkansas Rule of Evidence 804(b)(1) provides that testimony given in a different proceeding is an exception to hearsay if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. We agree that appellant did not have a

---

[3] His sentences for the remaining charges were to run concurrently with this thirty-five year sentence.

[4] Appellant also argues that the State failed to show that Puckett was unavailable as is required by Arkansas Rule of Evidence 804. Rule 804 provides that a witness is unavailable if he is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. The party seeking to introduce prior testimony of witness because that witness is unavailable must show that he or she made good-faith effort to procure attendance of missing witness. *See Register v. State*, 313 Ark. 426, 855 S.W.2d 320 (1993). Appellant argues that the State did not show that it make a good-faith effort to procure Puckett as a witness. However, we do not address this issue because appellant failed to raise this specific objection to the trial court. Appellant apparently raised a general hearsay objection in its response to the State's motion *in limine*, but when Puckett's statement was read into the record, appellant objected only on the ground that some of his statements might be excludable under *Miranda*. He did not raise even a general hearsay objection during the trial. Moreover, he did not specifically argue that the State failed to show that the witness was unavailable, or that the prerequisites for admitting former testimony were not met. A contemporaneous objection is required in order to preserve for appeal issues that were raised in a motion *in limine* where the trial court failed to rule on the motion, or where the motion is vague. *See Slocum v. State*, 325 Ark. 38, 924 S.W.2d 237 (1996); *Massengale v. State*, 319 Ark. 743, 894 S.W.2d 594 (1995). Because appellant failed to raise this specific objection to the trial court, we decline to address it on appeal.

similar opportunity or similar motive to develop Puckett's testimony at the bond revocation hearing that would warrant the admission of the testimony as an hearsay exception at his criminal trial.

██ The Confrontation Clause of the Sixth Amendment to the United States Constitution states: "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." Article 2, section 10, of the Arkansas Constitution repeats that same right of confrontation. *See also Smith v. State*, 340 Ark. 116, 8 S.W.3d 534 (2000). In *Scott v. State*, 272 Ark. 88, 612 Ark. 88 (1981), the Arkansas Supreme Court discussed factors that a court should consider when determining whether the admission of former testimony violates Rule 804 and the Sixth Amendment's Confrontation Clause. The issue in *Scott* was whether a transcript of testimony taken at a preliminary hearing to determine probable cause could be used in the defendant's subsequent criminal trial. The court cited such factors as whether the circumstances in the prior hearing closely approximated those that surround a typical trial; whether the witness was under oath; whether the defendant was represented by counsel and had every opportunity to cross-examine the witness; and whether the trial was before a judicial tribunal equipped to provide a judicial record. *See id.* (citing *California v. Green*, 399 U.S. 149 (1970)). The *Scott* court held that the trial court erred in allowing the transcript in that case, where the transcript was brief and the cross-examination was limited, and where the motivation of the witness was at issue because she was the former girlfriend of one of the defendants. The *Scott* court stated:

> *The hearing was not one where a motive existed to develop testimony as one would have in a trial.* The appellants were represented by attorneys but were not obligated to cross-examine the witness. *To presume that they should have done so would be to presume that they knew the testimony could be used later in the absence of the witness.*

*Scott v. State*, 272 Ark. at 95, 612 S.W.2d at 113 (emphasis added).

██ Here, appellant's Sixth Amendment Confrontation Clause right was violated because he did not have a similar motive and opportunity to develop Puckett's testimony at the bond revocation hearing as he would have had at trial. The purpose of a bond-revocation hearing is to determine whether reasonable cause exists to believe that a defendant has committed a felony while released pending adjudication of a prior charge, so that the court may

revoke the defendant's release. *See* Ark. R. Crim. P. 9.6. Our supreme court has stated that a hearing held pursuant to Rule 9.6 is not a hearing of an adversarial nature that requires representation by counsel. *See Reeves v. State*, 261 Ark. 384, 548 S.W.2d 822 (1977). Thus, the liberty interest at stake at a bond-revocation hearing is not equivalent to the liberty interest at stake in a criminal trial, as is reflected in the lower standard of proof required to revoke a defendant's bond. It follows then, that a defendant may not have the same motive and opportunity in developing or attacking testimony in a bond-revocation hearing as he would in a trial or even a preliminary hearing, proceedings which are undisputably adversarial in nature. *Compare Hamblin v. State*, 44 Ark. App. 54, 866 S.W.2d 119 (1993)(holding that testimony of child's mother during temporary-custody probable-cause hearing respecting defendant father's shaking of child, where defendant proceeded without counsel, was admissible under hearsay exception for former testimony, because the defendant's motive to develop the testimony in the chancery case was very similar to his motive in the criminal case *i.e.*, to avoid any implications of child abuse).

The State asserts that appellant's motivation at both hearings was similar because his motivation was to discredit Puckett's testimony. Certainly appellant sought to discredit Puckett's testimony. However, appellant's lack of a similar opportunity to develop the testimony at the bond hearing, in order to so do, is particularly evident in this case. Here, the trial court was notified by appellant's counsel at the bond hearing that he would not represent counsel on the other criminal charges. Therefore, the trial court was clearly on notice that appellant's counsel was not prepared to develop the testimony by direct, cross, or redirect exam. *Compare Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993)(holding prior testimony was admissible where the witness who first testified during a suppression hearing was murdered after he testified, where the defendant was represented by counsel who had extensively cross-examined the witness).

The State's assertion that appellant's motivation was the same at both proceedings — to discredit Puckett — begs the question of how appellant could do so when the information regarding Puckett's relationship with Mahan was not known to him at the time of the bond-revocation hearing. As a result, appellant was not afforded the opportunity at the bond hearing to memorialize in the transcript questions and responses that would demonstrate or refute Puckett's credibility. Thus, the jury in the subsequent trial was not

afforded "a satisfactory basis for evaluating the truth" of his testimony, *see Mancusi v. Stubbs*, 408 U.S. 204 (1972), because Puckett was not cross-examined in front of the jury, and because the transcript that was used was devoid of any basis for determining his motivation for testifying.

■ Finally, the motive of the witness was questionable here, because Puckett had asked the victim out shortly before the November 28 incident, and in fact spent Thanksgiving with her, a few days before the incident. *See Dutton v. Evans*, 400 U.S. 74 (1970) (stating one indicium of the reliability of the witness's testimony is his motive to lie or misrepresent the evidence). Puckett's testimony that appellant confessed to him that he intended to tie up and kill Mahan is the only direct proof of appellant's intent; moreover, his testimony contradicts Mahan's testimony that appellant did not threaten her. The State argues that appellant failed to show that Puckett would have testified differently or that his motive for testifying at the bond-revocation hearing was different from his motive would be at appellant's criminal trial. Given his relationship with the victim, there is no reason to assume that Puckett's incriminating testimony would be any different at the subsequent hearing or that his motivation would be different; however, that does not make his testimony at the bond-revocation hearing credible or his motivation for testifying less questionable.

■■ We note that appellant also challenges the sufficiency of the evidence supporting his convictions. However, his argument with regard to his convictions is barred because he failed to renew his motion for a directed verdict at the close of all of the evidence. *See* Ark. R. Crim. P. 33.1; *King v. State*, 338 Ark. 541, 999 S.W.2d 183 (1999). Based on the foregoing, we hold that appellant's Sixth Amendment Confrontation right was violated by the introduction of Puckett's bond-hearing testimony at this criminal trial. Therefore, we reverse and remand for a new trial on the charges of first-degree attempted murder and first-degree attempted kidnapping.

Affirmed in part; reversed and remanded in part.

NEAL and VAUGHT, JJ., agree.

PITTMAN, HART, JENNINGS, JJ., concur.

STROUD, C.J., ROBBINS, J., and HAYS, S.J., dissent.

J OHN E. JENNINGS, Judge, concurring. I join in the majority's decision to reverse. In my view this result is required by the supreme court's decision in *Scott and Johnson v. State*, 272 Ark. 88, 612 S.W.2d 110 (1981), and Rule 804(b)(1) of the Arkansas Rules of Evidence. I do not believe that the Confrontation Clause of the Sixth Amendment requires reversal. And while I agree with the dissent that there was an opportunity to cross-examine at the bond hearing, I do not believe that there was a sufficiently "similar motive" to cross-examine as to the testimony that is relevant in the case at bar. Clearly Rule 804(b)(1) requires both opportunity and "similar motive."

At the bond revocation hearing, by the time the officer testified about appellant's admission that he intended to tie Ms. Mayhan up and kill her, there was already evidence before the judge that Proctor had committed burglary. At this stage of the proceedings the revocation of his bond on the prior unrelated charge was a foregone conclusion. For this reason, the attorney at the bond revocation hearing did not have much motive to cross-examine the officer on this particular testimony.

Finally, I must agree with Judge HAYS that the fact that Proctor had a different lawyer at the bond revocation hearing is of no consequence.

PITTMAN and HART, JJ., join in this concurrence.

S TEELE HAYS, Special Judge, dissenting. I would affirm the trial court. In my estimation, neither the Sixth Amendment Confrontation Clause nor Rule 804(b)(1) of the Arkansas Rules of Evidence was breached by the admission of Officer Bart Puckett's testimony. Only two requirements are imposed by the Confrontation Clause: the declarant must be unavailable for trial and the testimony must be reliable. *Hamblin v. State*, 44 Ark. App. 54, 866 S.W.2d 119 (1993); *Scott and Johnson v. State*, 272 Ark. 88, 612 S.W.2d 110 (1981); *Ohio v. Roberts*, 444 U.S. 59 (1980); *Dutton v. Evans*, 400 U.S. 74 (1970); *California v. Green*, 399 U.S. 166 (1969). Both requirements are present in this case.

One of those requirements — Officer Puckett's availability — was not preserved for appellate review and is not before us.[1] The other — the reliability of his testimony — is, I contend, beyond any

---

[1] It is not disputed that Officer Puckett was in uniform in Kosovo, Serbia.

serious challenge. But even if the majority was correct, and the testimony should have been excluded, it would require remanding only the attempted murder and kidnaping convictions, as there is sufficient evidence, extraneous to Officer Puckett's testimony, to affirm the convictions for burglary, terroristic threatening, stalking and battery.[2]

To adequately illustrate these two assertions — the reliability of Officer Puckett's testimony and the presence of extraneous evidence which supports the remainder of the convictions — requires examining the trial record more closely than the majority opinion allows.

This is a classic case of chronic, domestic abuse. In June 1997, Melissa Mahan and appellant began a stormy affair lasting off and on for some fourteen months. The relationship was interspersed with physical violence, harassment and dire threats. In August 1998, following an altercation, appellant was charged with domestic battery, second offense, of the alleged victim, Melissa Mason. While appellant was free on bail, he was arrested on November 29, 1998, on the charges now before us on appeal. Based on the latter charges, the State moved to revoke appellant's bond, alleging that he had committed a felony while free on bail.[3]

Melissa Mahan testified under subpoena. She was a reluctant witness. She did not want appellant to be prosecuted; she wanted him to leave her alone. She told the jury her affair with appellant ended initially in February 1998 for reasons she attributed to his fiery temper. She said, "[h]e would just snap." Shortly after this breakup appellant blocked her car in the driveway as she was trying to leave. She managed to get to the police station to report the incident and returned to the motel where she worked. Appellant forced his way into her room. He struck her in the face several times and kicked her in the head and back while she was lying dazed on the floor. When she asked another employee, Brandon Wittenberg, to call the police, appellant told him Melissa would be dead before the police got there. The next day as she drove her five year old son out of town, appellant followed in his car. She said he

---

[2] The statement in the majority opinion that appellant has not appealed from the convictions for burglary, terroristic threatening, stalking, and batttery is demonstrably incorrect. *See* Notice of Appeal (Record, p.66) and Appellant's Brief (p. 3).
[3] The majority opinion refers to this revocation hearing, as "an unrelated case." True, in a sense, but it should be noted that it involved a similar pattern of abuse between the same parties.

would "sometimes get in front of me, sometimes behind me, sometimes beside me." He forced her to pull off the road and told her he would "come after me and my son." As she was delivering some of appellant's belongings to the home of a mutual friend, after the breakup, appellant arrived and struck her in the face several times. She testified that on one occasion appellant took her car keys, knocked her into her car, and "placed his hands around my neck."

On November 28, 1998, she said appellant called her and insisted he was coming over to talk. She told him there was nothing to talk about. She left and spent the night with her parents. The next morning when she returned with her son, she heard the attic door in her bedroom close. She told her son to get back in the car, and she called to appellant that she knew he was there and she was going to call the police. Officer Puckett arrived, followed shortly by Officer James Abbey. She asked Officer Puckett not to arrest appellant, "just let him know he cannot come back, it is over." When Officer Abbey arrived appellant was given the *Miranda* warnings, searched, and found to be carrying handcuffs, a sheath knife with a six inch blade, gloves, two rolls of duct tape, a nylon rope, a flashlight, and a multi-purpose tool containing pliers, a screwdriver, and knives. She said appellant did not threaten her, he sat in a chair in tears begging her to work things out, as she stood in the doorway. Michael Phillips testified that he and appellant were good friends. He said that when Melissa returned appellant's things to Phillips' house, appellant arrived while Melissa was in the yard. He said she came inside "frantically upset and crying" and told him appellant had hit her. When he asked appellant if it was true, appellant said it was.

Officer John Thessing testified that he interviewed Melissa Mahan following the episode at Michael Phillips' house. He said she was "quite upset and distraught, she was trying to get appellant to leave her alone." He said she told him appellant had hit her several times and had threatened to kill her son.

Officer Christopher Padgett testified that he took a report from Melissa Mahan at police headquarters around 11:30 p.m. on February 13, 1998. He described her as "very upset and crying, she kept repeating that her ex-boyfriend would not leave her alone." She told him appellant had threatened her and her son, paging her and coming to her house. Officer Padgett examined her pager, which had a coded message. He asked appellant what the message was and appellant told him it meant, "I love you to death."

Officer James Abbey testified he was Officer Puckett's back-up on November 29 and participated in appellant's arrest at Ms. Mahan's house. He identified the articles appellant was carrying at the time of his arrest. He said appellant's vehicle was parked two and one-half blocks away partially hidden behind a dumpster. Officer Abbey recovered a receipt from Wal-Mart indicating the duct tape, rope, flashlight, and pliers had been purchased that morning.

Officer Bart Puckett's testimony from the bond revocation hearing was introduced over the objection of the defense. He came on duty about 6:00 a.m. Because Ms. Mahan had requested extra patrol, he drove by her house earlier and saw nothing out of the ordinary. Later he saw her car in the drive, a door standing open, her son in the back seat and Melissa Mahan in her doorway calling to someone. When he approached the house, appellant came out. Officer Puckett asked appellant why he was there and appellant told him he just wanted to talk to Melissa for five minutes. Ms. Mahan told Officer Puckett that appellant had been in her house, had jumped out of the attic, and that she wanted him out of her house.

When Officer Abbey arrived, appellant was searched, and the various articles removed from his belt and pockets. Officer Puckett testified that when he and appellant were back at police headquarters, appellant was again warned pursuant to *Miranda* and that he told Officer Puckett he had entered the house through an attic vent, that he planned to tie Melissa up, kill her, and then himself. Asked if he would have killed her son, appellant answered, "I don't know. I guess." Asked what he would do that day if he were released, he said he would probably try to finish what he had started, "kill Melissa."

Appellant did not challenge the State's proof. The single defense witness, Josh Edwards, testified that he had worked with appellant and that they had roomed together for a few weeks. He said Melissa Mahan and appellant seemed to be congenial, and he never saw any signs of physical abuse or violence. He described appellant as happy and carefree, never angry.

Returning to the issue of the Confrontation Clause, the State maintains that the Confrontation Clause was not raised in the trial court and, therefore, is not preserved for appellate review. Appellant does not controvert the State's contention. Prior to trial, the State filed a motion *in limine* asking the court to admit Officer Puckett's testimony pursuant to Ark. Rule Evid. 804(b)(1) based on his being

unavailable. Appellant filed a motion in opposition based on several grounds, including the Confrontation Clause. Appellant's motion was not ruled on. At a pretrial conference shortly before trial the State profferred Officer Puckett's testimony. The appellant objected on a number of grounds not including the Confrontation Clause. The State's point is well taken. *See Hall v. State*, 343 Ark. 62, 31 S.W.3d 850 (2000); *Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998). However, since the majority has opted to address the argument I feel obliged to follow suit.

If there were any serious suggestions that Officer Puckett's testimony was suspect or unreliable, the majority might be on firm ground. But the fact is, his testimony is fully consistent with the other evidence in the record. The majority opinion states that Officer Puckett's testimony was the only direct proof of appellant's intent. With due deference to the majority, I submit that the assertion short-changes the record. That may have been the only testimonial evidence of appellant's specific intent on the morning of November 29, but there was no shortage of direct testimony that appellant had threatened to kill Melissa Mahan on several occasions. She testified to death threats by appellant toward her and her son; Brandon Wittenberg testified to death threats by appellant. Officer Padgett testified to appellant's message on Melissa Mahan's pager, "I love you to death." Officer Abbey's testimony that appellant's car was parked two and one-half blocks away hidden behind a dumpster may not be direct evidence of appellant's intent, but it is highly suggestive of an ulterior motive of some kind. But laying all that aside, the tangible evidence of appellant's intent could hardly be more incriminating. There was the physical evidence of appellant's having broken into Melissa Mahan's house through an attic vent and the muddy foot prints on the porch near the vent from appellant's boots. Most compelling were the items appellant was carrying with him at the time. They provide the near equivalent of a smoking gun. They were, in fact, precisely the tools one would expect to find on someone bent on such a venture.

The majority opinion states that Officer Puckett's testimony contradicts Ms. Mahan's testimony that she was not threatened by appellant. But nothing in Puckett's testimony implies that she was. The fact that Ms. Mahan did not feel threatened during those few minutes she stood in the doorway before the police arrived says little one way or the other of what might have happened had not the police arrived when they did.

Nor am I persuaded that Rule 804(b)(1) required the exclusion of Officer Puckett's testimony. The bright-line demands of the Rule were scrupulously observed: appellant was represented by counsel; the declarant, Officer Puckett, was under oath; Puckett was subject to cross examination; and the proceedings were heard before a tribunal capable of rendering a judicial transcript, and did so. The majority challenges the proceeding on several grounds: appellant lacked a similar motive and opportunity to cross-examine Officer Puckett at the bond hearing; the lawyer who represented appellant at the bond hearing was not appellant's counsel at the trial; Officer Puckett's testimony is stigmatized by the fact that he had asked Melissa Mahan to have lunch; and a bond revocation is non-adversarial and entails a lesser standard of proof than is required in a criminal trial.

Admittedly, a trial and a bond hearing are not identical, but neither are they "significantly different" within the context of Rule 804. A common purpose involves the quantum of proof the State expects to produce to link the accused to the crime with which he stands charged. Moreover, at the bond revocation hearing the State was required to prove that appellant had committed a felony while free on bail on the pending charges. That was the objective of Officer Puckett's testimony — proving the same felony for which appellant was later tried. Defense counsel's motive to offset that testimony would have been essentially the same at either proceeding.

As for the opportunity to cross-examine Officer Puckett at the bond hearing, the record discloses that counsel for appellant questioned Puckett at four separate intervals during his testimony, and there is not the slightest indication that his questioning of Officer Puckett was restricted.

The fact that Officer Puckett's interest in Melissa Mahan seems to have gone beyond mere professionalism raises concerns, but only momentarily. The social interaction was minimal — Thanksgiving dinner with the Mahan family. More importantly, there is no indication that his testimony was colored to curry favor with her. In fact, his actions belie that suggestion, since he arrested appellant notwithstanding her pleas to the contrary.

Lastly, the fact that there was a change of counsel between the bond hearing and the trial cannot be used defensively to defeat Rule 804. The United States Supreme Court pointed out the fallacy of that contention in *Ohio v. Roberts, supra*:

Nor does it matter that, unlike Green, respondent had a different lawyer at trial from the one at the preliminary hearing. Although one might strain one's reading of *Green* to assign this factor some significance, respondent advances no reason of substance supporting the distinction. Indeed, if we were to accept this suggestion, *Green* would carry the seeds of its own demise; under a "same attorney" rule, a defendant could nullify the effect of Green by obtaining new counsel after the preliminary hearing was concluded.

448 U.S. at 72.

For the reasons stated, I would affirm the judgment appealed from. I am authorized to say that STROUD, C.J., and ROBBINS, J., agree.