Paul SMITH *v.* STATE of Arkansas

CR 01–440                                          61 S.W.3d 168

Supreme Court of Arkansas
Opinion delivered December 13, 2001

*William R. Simpson, Jr.*, Public Defender; *Steve Abed*, Deputy Public Defender; by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Paul Smith appeals his conviction for the kidnapping of Marcus Thomas and Kayla Goodwin on the basis of sufficiency of the evidence. In this same trial, Smith was convicted of the first-degree murder of Emma Goodman. He takes no appeal from that conviction. On this appeal, we have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(2) as a case in which the penalty is life imprisonment. Because Smith failed to renew his directed-verdict motion after the State offered rebuttal evidence, Smith's appeal may not be heard. This court has carried out a review under Rule 4-3(h) and finds no errors prejudicial to the appellant. The State cross-appeals asserting it was deprived of its tenth peremptory challenge. Its appeal, however, was not filed until more than the permitted thirty days and, as such, is untimely. Direct appeal affirmed. Cross-appeal dismissed.

*Facts*

Emma Goodman was killed by strangulation and multiple blunt-force trauma sometime during the night of May 1-2, 1998. Paul Smith was charged and convicted. Smith and Goodman had been in a relationship and living together when Goodman broke it off after an argument and made Smith leave the house.

Goodman's eleven-year-old grandson Marcus Thomas lived with her. He testified that Smith had been dating his grandmother, and that on the day before the murder, he saw Smith ask Goodman for keys, but his request was refused. Marcus further testified that before leaving that day, Smith pushed Goodman. On the night of the murder, Marcus and his three-year-old sister Kayla went to sleep on the couch in a dining area. During the night, a noise woke Marcus up. He went to an aunt's bedroom, turned on the light, and found Smith there choking his grandmother. When Smith saw Marcus he stopped, but then commenced hitting Goodman in the face. Goodman was pleading with him to stop, which he apparently

did at that time. Smith then went outside to get something. Goodman closed and locked the door, and would not let Smith back in. Smith regained entry. It appears that ultimately, Goodman may have let Smith back in the house; however, there was evidence of forcible entry at the front door.

By this point, Goodman was holding Marcus and Kayla in her lap, and Smith threatened to cut her with a pocket knife if she did not let the children go. She did, and Smith then got her to the floor and began hitting her in the face with a doorknob he tore from a door in the kitchen. Marcus then testified that Smith dragged Goodman up the stairs by her hair, but that they returned downstairs thereafter. The autopsy substantiated injury beneath the scalp consistent with Marcus's account. Marcus testified further that his grandmother told him to call the police if Smith took her back upstairs, but he could not because the wires were cut. At this point, Marcus and Kayla went into a bedroom, and Smith locked them in. After that, Marcus heard bumping noises upstairs and then nothing. It became quiet, and they fell asleep. The next morning, Marcus jimmied his way out of the bedroom with a knife he found under the bed. He and Kayla found Goodman on a couch. They tried to wake her up, but could not. When an aunt arrived, she went to the service station and called 911. Marcus testified that the phones had been working the day before, and he did not know who had pulled the phone wire out of the wall.

Cindy Robinson, Goodman's niece, testified that after the murder she went to her mother's house, which was next to Smith's home. Smith was in the yard washing his truck. Robinson spoke with her mother, Goodman's twin sister, and they decided to go over to Goodman's house. On their way out, Smith tried to talk to them, but they refused. Robinson testified that Smith was saying, "That's why I did what I did." Arresting officers noted fresh wounds on Smith's hands. Bloody towels and cloths were retrieved from Smith's truck, and blood was found on Smith's shoes. Additionally, blood-stained articles and blood were also found at Goodman's residence. The autopsy showed Goodman was killed by strangulation and blunt-force trauma. Smith was convicted of first-degree murder and two counts of kidnapping.

### Sufficiency of the Evidence

Smith asserts there was insufficient evidence to support his conviction for the kidnapping of Marcus and Kayla. However,

Smith states in his brief that after the State presented rebuttal evidence, "defense counsel did not renew his earlier directed verdict motions regarding the kidnapping charges." A review of the record confirms Smith did not move for a directed verdict after the State's rebuttal evidence.

■ The issue of failure to move for a directed verdict after the State puts on rebuttal evidence was discussed in *King v. State*, 338 Ark. 591, 999 S.W.2d 183 (1999). Therein we noted our procedural rules require that a motion for a directed verdict be brought at the "conclusion of the evidence presented by the prosecution and again at the close of the case. . . ." Ark. R. Crim. P. 33.1. Therein we also stated, "Close of the case means close of the whole case, in other words, after the last piece of evidence has been received." *King, supra.* This court stated in *Rankin v. State,* 329 Ark. 379, 386 948 S.W.2d 397 (1997), that:

> Even if a defendant renews his motion at the close of his case-in-chief, the requirement of the rule to renew the motion at the "close of the case" obligates the defendant to renew the motion again at the close of any rebuttal case that the State may present in order to preserve the sufficiency issue for appeal.

*See also, Heard v. State,* 322 Ark. 553, 910 S.W.2d 663 (1995) [overruled on other grounds in *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998)]; *Christian v. State,* 318 Ark. 813, 889 S.W.2d 717 (1994).

■ This court has repeatedly held that in order to preserve for appeal the issue of the sufficiency of the evidence in a criminal case, the appellant must move for a directed verdict both at the close of the State's case and at the close of the whole case. *Hayes v. State,* 312 Ark. 349, 849 S.W.2d 501 (1993); *Collins v. State,* 308 Ark. 536, 826 S.W.2d 231 (1992); *DeWitt v. State,* 306 Ark. 559, 815 S.W.2d 942 (1991). *See also, Thomas v. State,* 315 Ark. 504, 868 S.W.2d 483 (1994).

■ Smith asserts that the rebuttal evidence only dealt with his argument of diminished capacity and a witness who intended to provide evidence that Smith's motive in the murder was jealousy. Thus, Smith argues that all the pertinent evidence on the issue of kidnapping had already been introduced when he last moved for directed verdict. On this basis, he argues he is in compliance with Ark. R. Crim. P. 33.1, and the analysis of *King, supra,* is not applicable. We first note that the analysis under *King, supra,* requires

that the motion must be renewed at the close of "any" rebuttal case the State presents. Additionally, under the instructions on the kidnapping charge, the jury was required to determine, among other things, whether the "conduct or a result thereof" was "the conscious object of" Smith. The jury may have been influenced by the rebuttal testimony on this issue and others. We hold Smith failed to preserve the question of sufficiency of the evidence by failing to move for a directed verdict after the State's rebuttal testimony. *King, supra.*

### Cross-Appeal

The State cross-appealed alleging the trial court erred when it refused to allow the State to use its tenth peremptory challenge. The State indicates, however, that its cross-appeal may be untimely under *Byndom v. State*, 344 Ark. 391, 39 S.W.3d 781 (2001), because the notice of appeal was not filed within thirty days of the entry of judgment. The State asks that this court apply *Byndom* prospectively because the application of rules governing a timely cross-appeal was unclear until the decision in *Byndom*. The notices of appeal in the present case were filed before *Byndom* was decided. The State cites to *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996) and *Aka v. Jefferson Hosp. Assoc.*, 344 Ark. 627, 42 S.W.3d 508 (2001), for the proposition that because the state of the law was unclear, any holding thereon should be prospective only. We note that both of these decisions speak to situations where there is conflicting case law or, in other words, older case law upon which the parties may have relied. The State offers no such case law. Rather, the argument by the State is that the law was not clear, presumably because Rule 3 does not refer specifically to cross-appeals. However, as this court stated in *Byndom*, Rule 3 refers to appeals, not direct appeals, and contrary to the State's argument in *Byndom*, there is no authority for the State to bring a cross-appeal other than under Rule 3.

In *Byndom*, this court addressed the issue of a cross-appeal by the State filed more than thirty days after the judgment was entered. This court held that the State had thirty days within which to file its notice of cross-appeal. Rule 3(b) provides that "the prosecuting attorney shall file a notice of appeal within thirty (30) days after entry of a final order by the trial judge." The word "shall" is mandatory. *Middelton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). The State had thirty days from the date of the entry of the judgment to file its notice of appeal, and it did not do so. This court

cannot reach the issue of the peremptory challenge because the notice of cross-appeal was not timely filed. *Byndom, supra.* Therefore, the State's cross-appeal was untimely, and this court will not consider it.

*Arkansas Supreme Court Rule 4-3(h)*

The transcript of the record in this case has been reviewed pursuant to Rule 4-3(h). Rule 4-3(h) requires, that in cases of sentences of life imprisonment or death, we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a) (1987). None have been found.

Direct appeal affirmed.

Cross-appeal dismissed.

IMBER, J., not participating.