The Honorable James Norton State Representative 3132 Bolin Hill Road Harrison, AR 72601
Dear Representative Norton:
I am writing in response to your request for an opinion regarding the Boone County Sheriff's Department's plan to conduct "presumptive drug use screenings"[1] on "all Boone County Jail intake prisoners over a given period of time." The data proposed to be collected includes the date, booking offense, age, race, and gender of the prisoner as well as the results of an oral swab drug test. Furthermore, the letter from Sheriff Hickman attached to your request for an opinion states that the information collected would not be used in any prosecution and would not include any identifiable personal information but would instead be used for "accurately and objectively defin[ing] the extent of the methamphetamine problem in [Boone] county. . . ." You have requested an opinion concerning the legality of the proposed course of action "to include but not limited to any potential civil rights or individual liberty concerns."
RESPONSE
In my opinion, the answer to this question will depend on whether the proposed drug testing would validly fall under the "special needs" exception to the warrant and probable-cause requirements in theFourth Amendment of the United States Constitution and Article 2, § 15 of the Arkansas Constitution set forth below or whether the proposed testing would be held to be reasonable under a totality-of-the-circumstances analysis. From the information provided, the interest of the Boone County Sheriff's Department appears to be one of "general law-enforcement" interests, though not for the immediate prosecution of those tested, and may not fall within the "special needs" exception to the warrant and probable cause requirements. Furthermore, I am uncertain as to the meaning of "jail intake prisoners" and whether this includes mere arrestees as well as convicted offenders. Because there is a different legal standard for arrestees than for convicts, such a difference will necessarily affect the analysis of the proposed searches under a totality of the circumstances balancing test, which some courts, including the Arkansas Supreme Court, have applied in lieu of the "special needs" exception. The courts have indicated that the inquiry is "context-specific." Consultation with the counsel to whom Boone County normally looks for legal advice is indicated.
As an initial matter, drug tests based on urinalysis or blood samples are considered searches under federal jurisprudence. See Chandler v. Miller,520 U.S. 305, 313 (1997); see also Padgett v. Donald, 401 F.3d 1273
(11th Cir. 2005), cert. denied sub nom. Boulineau v. Donald, 536 U.S. (Oct. 3, 2005). While there does not appear to be any Arkansas case law determining whether the Fourth Amendment or Art. 2, § 15 applies to the use of an oral swab to gather a physical sample for a drug test, under Arkansas law a search takes place whenever anything not previously in plain view to law enforcement is revealed to the investigating officer.Norris v. State, 338 Ark. 397, 993 S.W.2d 918 (1999), supplemental opinion at 338 Ark. 397, 999 S.W.2d 183 (1999). The Arkansas Rules of Criminal Procedure broadly define a "search" as:
 any intrusion other than an arrest, by an officer under color of authority, upon an individual's person, property, or privacy, for the purposes of seizing individuals or things or obtaining information by inspection or surveillance, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or a violation of the individual's rights under the Constitution of the United States or this state.
Ark. R. Crim. Pro. 10.1(a). Additionally, Ark. R. Crim. Pro. 18.1(a) states that "[n]otwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the defendant" to allow the taking of samples of bodily specimens "which involve no unreasonable intrusion thereof" for the purposes of pretrial discovery. Ark. R. Crim. Pro. 18.1(a)(vi). In my opinion, an Arkansas court would likely hold that the taking of a physical sample for a drug test through the use of an oral swab is a search.
The Fourth Amendment outlines the federal proscriptions on the government's power to execute searches and seizures:
 The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probably cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.
United States Constitution, amend. 4. Additionally, the Arkansas Constitution limits the government's power of search and seizure:
 The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.
Ark. Const. Art. 2, § 15.
The Arkansas Supreme Court typically interprets Article 2, § 15 in the same manner as the Fourth Amendment of the United States Constitution.McDonald v. State, 354 Ark. 216, 221 fn. 2, 119 S.W.3d 41 (2003). The Arkansas Supreme Court has, however, interpreted Art. 2, § 15 to provide greater protections to citizens and more restrictions on police activity than is imposed by federal law in certain circumstances. See, e.g.,Brown, supra; and McDonald, supra at fn. 2 (noting that the Arkansas Supreme Court had extended greater protections than the minimal federal requirement in Griffin v. State, 347 Ark. 788, 67 S.W.3d 582 (2002) (nighttime search) and State v. Sullivan, 348 Ark. 647, 74 S.W.3d 215, (2002) (pretextual arrest)). Furthermore, a warrantless search is presumed to be unreasonable unless the government can show that the search falls within an exception to the warrant requirement enumerated by the courts. See Stevens v. State, Ark. App., S.W.3d (May 11, 2005). Exceptions vitiating the warrant and probable-cause requirements include, inter alia, exigent circumstances, United States v. Banks,540 U.S. 31 (2003), a search incident to arrest, Chimel v. California,395 U.S. 752 (1969), consent, Schneckloth v. Bustamonte, 412 U.S. 218
(1973), probationer and parolee searches, U.S. v. Knights, 534 U.S. 112
(2001), and "special needs" searches, Chandler, supra.
In my opinion, the "special needs" exception to the Fourth Amendment appears to be the most applicable. The United States Supreme Court discussed the "specials needs" exception in Chandler, supra:
 Searches conducted without grounds for suspicion of particular individuals have been upheld . . . in "certain limited circumstances." See Treasury Employees v. Von Raab, 489 U.S. 656, 668 (1989). These circumstances include brief stops for questioning or observation at a fixed Border Patrol checkpoint, United States v. Martinez-Fuerte, 428 U.S. 543, 545-550, 566-567 (1976), or at a sobriety checkpoint, Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 447, 455 (1990), and administrative inspections in" closely regulated" businesses, New York v. Burger, 482 U.S. 691, 703-704 (1987).
520 U.S. at 308; see also New Jersey v. T.L.O., 469 U.S. 325 (1985) (first using the phrase "special needs" to describe the exception to theFourth Amendment for suspicionless searches for non-law enforcement objectives). In Chandler, the Court held that a Georgia statute requiring candidates for office to pass a drug test was unconstitutional because Georgia failed to articulate a "special need" that would trigger the exception to the Fourth Amendment described above. 520 U.S. at 323. The Court concluded that where public safety was not "genuinely in jeopardy" a suspicionless search under the Georgia statute was unconstitutional.Id. The Court stated that the special need "must be substantial — important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion." Id. at 318. When the "special needs" exception is proposed for suspicionless searches for purposes beyond normal criminal investigation and prosecution, a court will conduct a "context-specific" inquiry that must balance the competing private and public interests. Id. at 313.
The Court held that the "need" advanced by Georgia was not a "special need" within the meaning of the "special needs" exception. Chandler,supra at 322. Specifically, the Court noted that there was no evidence of drug-abuse problems in candidates for public office and that there was no evidence that normal law-enforcement channels would be unable to handle individual problems if they were to occur. Id. at 319-20. Subsequently, the Court refined the standard for determining whether a "special need" exists in Ferguson v. City of Charleston, 532 U.S. 67 (2001). The Court held that a policy of performing drug tests on prenatal patients and turning positive test results over to law enforcement did not fall within the "special needs" exception. Id. at 86. In reviewing the evidence in a context-specific inquiry, the Court determined that the "relevant primary purpose" of the policy was not removed and separate from the State's general interest in law enforcement. Id. Citing Chandler, supra, the Court reiterated that a "special need" must be a need separate and divorced from criminal detection and prosecution. Id. at 84-86. A "special need," therefore, is one unrelated to the general interest in law enforcement, and a context specific inquiry must demonstrate that the need claimed is not one that might be met through the normal channels of the warrant and probable-cause requirements.
The Arkansas Supreme Court has upheld suspicionless searches, though not as "special needs" searches. See, e.g., Polston v. State, ___ Ark. ___, S.W.3d ___ (Jan. 20, 2005) (upholding the required DNA testing of convicted felons under a totality-of-the-circumstances analysis). InPolston, the court rejected a "special-needs" analysis and relied on the diminished Fourth Amendment protections afforded a convict compared to an unincarcerated citizen under a totality-of-the-circumstances standard. Slip Op. at 6-7 (Jan 20, 2005); see also Padgett, 401 F.3d at 1279-80
(noting the lowered expectation of privacy held by convicts). The totality-of-the-circumstances test balances the government's interests against the individual's expectation and right to privacy. Polston,supra at 6-7. The government's interest may be traditional interests in law-enforcement activities, unlike a "special-needs" search. See, Id. The reasonableness of a search under the totality-of-the-circumstances test is heavily impacted by the subject of the search. An arrestee is still presumed innocent, see Estelle v. Williams, 425 U.S. 501, 503 (1946), while a convict has a lesser expectation of privacy, see Polston, supra;and Padgett, supra.
Whether the proposed suspicionless drug-screenings described in your request and in the attached letter from Sheriff Hickman would violate the prohibition on unreasonable searches or seizures of anyone so searched is a "context specific" question that could only be definitively decided by a court. The motivation of the Sheriff in this instance appears to be related to a general interest in law-enforcement, which militates against the constitutionality of the proposed drug testing under a "special-needs" analysis. Under a totality-of-the-circumstances test, the government's interest, whether law-enforcement or otherwise, is balanced against the individual's privacy interest. As noted earlier, an arrestee and a convict have different expectations of privacy that could mean different results under the totality-balancing test. Consultation with the county attorney with respect to whether the proposed course of action meets constitutional standards such as those set forth above is warranted.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh
[1] While the language used implies that there is a presumption attached to the drug use screening, a review of your request for an opinion and the letter from Sheriff Hickman reveals that the drug-use screenings are intended to be used objectively on all intake prisoners over a period of time or all intake prisoners until an appropriate data sample is collected. I interpret the use of "presumptive" to mean "suspicionless" in the context of your request for an opinion.