Kenyon Trammel WASHINGTON *v.* STATE of Arkansas

CA CR 92-1054            856 S.W.2d 631

Court of Appeals of Arkansas
Division I
Opinion delivered June 20, 1993

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clementine Infante*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Chief Judge. Kenyon Washington entered a conditional plea of guilty to a charge of possession of a controlled substance (crack cocaine) with intent to deliver. He was sentenced by the court to ten years imprisonment. Under Rule 24.3(b)of the Arkansas Rules of Criminal Procedure, Washington now appeals from the trial court's denial of his motion to suppress evidence. We find no error and affirm.

On February 3, 1992, Kirk Lane, a detective with the Pulaski County Sheriff's Department, received information that there was narcotics activity at Poppy's Place, a snack bar and pool hall in Alexander. He had received similar reports before. At 9:30 p.m. Detective Lane arrived at Poppy's Place in plain clothes and in an unmarked car. He walked to a window of the business, while waiting for other officers to arrive. The front door was partially open.

Looking through the window, Lane could see an open area with pool tables and pinball machines. Beyond the open area he could see into another room in which three or four men appeared to be watching television. When other police cars arrived he saw the men go to the window and look out. Detective Lane testified that then "it appeared like they began to panic." Lane testified that Washington had what appeared to be a black film canister in his hand. Lane testified, "[Appellant] made several movements like he didn't know which way to go, turned around and placed the item into the floor . . . like he was throwing them into the floor." He then saw another man, Joe Dickerson, come up to the appellant, take a matchbox out of his pocket, and hand it to the appellant. Appellant "did the same thing" with the matchbox.

At this point the officers entered the building as appellant, Joe Dickerson, and another man walked out. Detective Lane testified that one man was left sleeping in a chair.

Lane walked to the place where he had seen the appellant

throw the containers down and found a hole in the floor.[1] Lane shined his flashlight into the hole and could see the matchbox and film canister on the dirt floor of the crawl space beneath the building. He checked for a loose board in the floor and could find none. He then asked another officer to shine a flashlight into the hole and Detective Lane went outside the building.

At one corner of the building Lane saw a loose concrete block in the foundation. Lane removed the block and could see the light from above shining on the matchbox and film canister. He reached his arm through the open space in the foundation and retrieved the containers. He then opened them, both of which contained "white rock-like substances" which subsequently proved to be cocaine.

Detective Lane testified that when he saw the matchbox and film canister through the hole in the floor he had a strong suspicion as to what might be contained in them, due to previous narcotics experience. He testified:

> I've been in the narcotics [division] for five years. And in the last two or three years since crack cocaine has really come strong in Pulaski County it became evident to me on people involved in dealing cocaine that these canisters are typical of what they [are] carrying them in. And due to the actions of the panic [sic] and the nervousness and the wanting to conceal these items and the fact of where they threw them and the fact they got rid of them. The fact that they're similar. I can show you a hundred cases that we've done in the last two or three years where these were the exact items that they concealed these items in. Or use to carry them around.

At the hearing on the motion to suppress, the State conceded that appellant had standing to contest the seizure.

■ As recently as 1991, the Supreme Court has reiterated the "cardinal principle" that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject

---

[1] From photographs admitted into evidence the hole appears to be approximately two to three inches in diameter.

to a few specifically established and well-delineated exceptions. *California* v. *Acevedo*, 500 U.S. ____, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991).[2] The observation of evidence in plain view, however, is not a search and therefore the resulting seizure is not the result of an unreasonable search. *Horton* v. *California*, 496 U.S. 128 (1990); *Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160 (1987), *cert. denied*, 484 U.S. 830 (1987); *Kelley* v. *State*, 261 Ark. 31, 545 S.W.2d 919 (1977). The basic test is whether the officer had a right to be in the position he was when the objects fell into his plain view. *Johnson, supra*; *Kelley, supra*.

■  Arkansas courts have treated "plain view" as an exception to the warrant requirement. *See e.g.*, *Johnson, supra*. The United States Supreme Court has suggested that the doctrine of plain view may perhaps be better understood not as being an independent exception to the warrant clause. *See Texas* v. *Brown*, 460 U.S. 730 at 738-39 (1983); *see also Horton* v. *California*, 496 U.S. 128 at 133-34 (1990). In *Texas* v. *Brown*, the Court said, in a plurality opinion:

> The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question. The Coolidge plurality, while following this approach to "plain view," characterized it as an independent exception to the warrant requirement. At least from an analytical perspective, this description may be somewhat inaccurate. We recognized in *Payton* v. *New York*, 445 U.S. 573, 587, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), the well-settled rule that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." A different situation is presented, however, when the property in open view is " 'situated on private premises to which access is not otherwise available for the seizing officer.' " As these cases indicate, "plain view" provides grounds for

---

[2] *Cf.* Justice Scalia's concurrence, 500 U.S. at ____, *et seq.*

seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.

The principle is grounded on the recognition that when a police officer has observed an object in "plain view," the owner's remaining interests in the object are merely those of possession and ownership. Likewise, it reflects the fact that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property, or incriminating evidence generally would be a "needless inconvenience," that might involve danger to the police and public. . . .[O]ur decisions have come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately. This rule merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property. [Citations omitted.]

■ Our courts have held that in order for the plain view doctrine to apply three criteria must be met: (1) the initial intrusion was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. *Johnson v. State*, 291 Ark. 260, 724 S.W.2d 160 (1987); *McQueen v. State*, 283 Ark. 232, 675 S.W.2d 358 (1984); *Freeman v. State*, 37 Ark. App. 81, 824 S.W.2d 403 (1992); *Munguia v. State*, 22 Ark. App. 187, 737 S.W.2d 658 (1987). This formulation was clearly based on the United States Supreme Court's holding in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). *See e.g. Johnson v. State, supra.* The requirement of *Coolidge* that the discovery of the evidence be "inadvertent" was overruled by the Supreme Court in *Horton v. California*, 496 U.S. 128 (1990).

Although appellant suggests that we might continue to require inadvertent discovery in plain view cases under the Arkansas Constitution, we need not decide that question here. As the court said in *Johnson v. State*:

The real concern expressed in *Coolidge* was with "a *planned* warrantless seizure." The inadvertence requirement has generally been interpreted to mean that "immediately prior to the discovery, the police lacked sufficient information to establish probable cause to obtain a warrant to search for the object." Inadvertence does not "encompass total surprise" or mean "unexpected." It is absurd to believe that the officers planned in advance to see Johnson walking on this property near the highway carrying an armful of marijuana, use that as a pretext to follow him onto the premises to make the arrest, and at that time seize the marijuana they expected to find there. The fact that the officers had an informant's tip that marijuana could be growing there does not make the sighting of the marijuana "advertent" in these circumstances. [Citations omitted.]

291 Ark. at 263, 724 S.W.2d at 162. We reach the same conclusion in the case at bar.

Appellant's argument focuses on two issues: (1) whether the intrusion of Detective Lane by reaching into the crawl space to seize the matchbox and film canister was constitutionally impermissible, and (2) whether the officers needed a warrant to open the closed containers.

■■ When Detective Lane looked through the window of Poppy's Place, he was in a place he was legally entitled to be and the matchbox and film canister came into his plain view. There is no contention that the officers were not entitled to enter the open business. Law enforcement officers may accept a general public invitation to enter commercial premises for purposes not related to the trade conducted therein. *United States v. Berrett*, 513 F.2d 154 (1st Cir. 1975). After Lane entered the business, the canister and matchbox were once again in plain view through the hole in the floor. The fact that it was necessary to use a flashlight to view the objects did not violate the Fourth Amendment. *Texas v. Brown*, 460 U.S. 730 (1983); *United States v. Lee*, 274 U.S. 559 (1927); *Freeman v. State*, 37 Ark. App. 81, 824 S.W.2d 403 (1992). Had the hole in the floor been large enough to enable the officer to reach through it with his hand, surely that intrusion into the dirt floor crawl space would not have been constitutionally

impermissible. "What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection[.]" *Katz* v. *United States*, 389 U.S. 347, 351 (1967). In the case at bar the officer's action was essentially equivalent: he reached his arm through an opening in the foundation to seize that which was in plain view from the interior of the business.

Clearly, an owner or operator of a business has an expectation of privacy in commercial property which society is prepared to consider reasonable. *New York* v. *Burger*, 482 U.S. 691 (1987). Nevertheless, an expectation of privacy in commercial premises is different from, and less than, a similar expectation in a person's home. *Burger, supra; see also Donovan* v. *Dewey*, 452 U.S. 594 (1981). We do not hold that a crawl space beneath a home or business is the kind of area which is subject to a search without a warrant. But the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. *California* v. *Greenwood*, 486 U.S. 35 (1988). Furthermore, one's reasonable expectation of privacy in a dirt floor crawl space under a business is qualitatively different than an expectation of privacy in the interior of one's home.

In *Delaware* v. *Prouse*, 440 U.S. 648 (1979), the Court said that the permissibility of a particular law enforcement practice is judged by balancing its intrusion on Fourth Amendment interest against its promotion of legitimate governmental interests. Here there was no general exploratory search of the crawl space; rather, as the trial judge noted, the intrusion was strictly limited to the seizure of that which had been in plain view. In determining whether evidence should be excluded on a motion to suppress, Rule 16.2 of the Rules of Criminal Procedure requires that consideration be given to the importance of the particular interest violated and the extent to which privacy was invaded. Under the peculiar circumstances of the case at bar we hold that the limited intrusion into the crawl space to seize evidence which was in plain view was constitutionally permissible.

In order for the plain view doctrine to be applicable the incriminating character of the object must be "immediately apparent." *Horton* v. *California*, 496 U.S. 128 (1990); *Texas* v.

*Brown*, 460 U.S. 730 (1983); *Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160 (1987). In *Texas* v. *Brown* an officer seized a balloon which he reasonably suspected contained drugs. The Supreme Court held that under the circumstances the "immediately apparent" requirement was met. The court said:

> The fact that [the officer] could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents — particularly to the trained eye of the officer.

Professor LaFave notes that in *Brown*, "[t]he defendant inexplicably raised only the question of the warrantless seizure of the balloon, and only that issue was addressed by the Supreme Court." 2 Wayne R. LaFave *Search and Seizure* § 5.5 (2d ed. Supp. 1993). Three justices, Stevens, Brennan, and Marshall, concurred in *Brown* to discuss the issue of the examination of the contents of the container. The concurring justices said:

> Alternatively, the balloon could be one of those rare single-purpose containers which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.". . . Viewing it where he did could have given the officer a degree of certainty that is equivalent to the plain view of the heroin itself. If that be true, I would conclude that the plain-view doctrine supports the search as well as the seizure even though the contents of the balloon were not actually visible to the officer.

In discussing a series of four cases, *People* v. *Miller*, 33 Cal. App. 3d 193, 108 Cal. Rptr. 788 (1973); *United States* v. *Candella*, 469 F.2d 173 (2d Cir. 1972); *United States* v. *Welsch*, 446 F.2d 220 (10th Cir. 1971); and *United States* v. *Brewer*, 343 F.Supp. 468 (D. Haw. 1972), Lafave says:

> [T]hese cases suggest in general a willingness of courts to permit police to look within containers in plain view upon a substantial basis for doing so. That is, while the rule discussed earlier which permits a surface inspection upon a reasonable suspicion cannot logically be extended to the opening of a container, which is more obviously the type of activity which constitutes a search, the opening of a

container is not seen as that much more intrusive, and thus a plain view interpretation which makes that possible upon solid evidence of the container's contents is attractive to the courts.

2 Wayne R. LaFave, *Search and Seizure* § 6.7(b) (2d ed. 1987).

While we recognize that the Constitution makes no distinction between "worthy and unworthy containers," *United States* v. *Ross*, 456 U.S. 798 (1982), it is equally clear that under some circumstances the nature of the container may be relevant to the question before us. In cases somewhat similar to the case at bar, courts have approved the opening of closed containers, under the plain view doctrine, when it was clear enough from the circumstances, including the experience of the officers, what the contents were. *See United States* v. *Drew*, 451 F.2d 230 (5th Cir. 1971) (pistol contained within an opaque plastic folder); *United States* v. *Grubczak*, 793 F.2d 458 (2d Cir. 1986) (black zippered case containing lock-picking tools). Compare *State* v. *Sapatch*, 108 N.C. App. 321, 423 S.E.2d 510 (N.C. Ct. App. 1992) (possession of film canisters, without more, insufficient to give rise to probable cause of a crime).

■ We think that the facts in the case at bar are analogous to those in *Grubczak, supra.* Deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea. Sibron* v. *New York*, 392 U.S. 40 (1968). *See also Tyler* v. *United States*, 302 A.2d 748 (D.C. 1973); *State* v. *Belton*, 441 So.2d 1195 (La. 1983), *cert. denied*, 466 U.S. 953 (1984); *People* v. *Rivera*, 233 Ill. App. 3d 69, 598 N.E.2d 423 (1992). In the case at bar, given the officer's previous experience both with the particular business and the type of containers involved and the actions of the defendant as observed by the police, we conclude that the contents of the film canister and matchbox could be "inferred from their outward appearance." *Texas* v. *Brown*, 460 U.S. at 750-51 (concurring opinion).

For the reasons stated the decision of the trial court is affirmed.

COOPER and MAYFIELD, JJ., agree.