Kent Edward McDONALD *v*. STATE of Arkansas

CR 02-813 . 119 S.W.3d 41

Supreme Court of Arkansas
Opinion delivered September 25, 2003

*Jimmy Doyle*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Kent Edward McDonald entered a conditional plea of guilty to three counts of theft by receiving, and one count of felon in possession

of a firearm. The sole issue on appeal is whether the circuit court erred when it denied McDonald's motion to suppress evidence. We find no error and affirm.

The White County Sheriff's Office received an anonymous report that there were stolen four-wheelers at McDonald's home located at 304 Blue Hole Road. At about 9:00 a.m. on December 7, 2001, Corporal Dean Burlison and Sergeant Woodrow Jones were dispatched to investigate the report. McDonald's home is connected to the county road by a 100-foot dirt driveway, and the officers were able to see multiple four-wheelers parked in front of the house. Specifically, a mule[1] and a green four-wheeler were parked in the driveway about ten feet from the house, and a red four-wheeler was parked in the front yard about twenty feet from McDonald's home.

When the officers arrived at about 9:30 a.m., it was raining. They knocked on McDonald's front door but there was no response. Corporal Burlison then walked to the driveway and looked at the mule and green four-wheeler while Sergeant Jones looked at the red four-wheeler in the front yard. Corporal Burlison recorded the vehicle identification numbers (VIN) stamped on the mule and the green four-wheeler, and Sergeant Jones recorded the VIN number on the red four-wheeler in the front yard. Both officers ran the VIN numbers through the National Crime Information Center and the mule and red four-wheeler were reported as stolen. The green four-wheeler was reported as belonging to McDonald.

Officers Burlison and Jones notified the Criminal Investigation Division (CID), and then secured the area. CID Detectives Jimmy Ervin and John Slater arrived at the scene shortly thereafter. Detective Ervin knocked on McDonald's front door, and Detective Slater looked at the mule and four-wheelers. No one answered the door, whereupon the detectives left to secure a search warrant. At about 2:00 p.m., the detectives returned with a search warrant and knocked on the door once more. Again, there was no answer. The detectives then executed a forced entry into the home by kicking in the front door and found Donald coming down the hallway from the back bedroom. They ordered him to the ground

---

[1] According to the testimony of Officer Burlison, a mule is a four-wheeler utility type vehicle, and not a traditional four-wheeler.

and proceeded to search the home and seize a rifle, some fishing poles, the mule, and two four-wheelers.

McDonald was charged with three counts of theft by receiving under Ark. Code Ann. § 5-36-106 (Repl. 1997) and one count of possession of a firearm in violation of Ark. Code Ann. § 5-73-103 (Repl. 1997). In a motion to suppress filed by McDonald, he asserted that the evidence was seized by the police officers in contravention of the Fourth and Fourteenth Amendments to the United States Constitution and Article 2, section 15, of the Arkansas Constitution. The circuit court conducted a hearing and denied McDonald's motion to suppress.

Upon McDonald's entry of a conditional plea of guilty to all charges with a reservation of his right to appeal the circuit court's order denying his motion to suppress, he was sentenced to six years' imprisonment on each count to run concurrently. He now appeals the circuit court's denial of his motion to suppress, maintaining as he did below that the officers seized evidence in violation of the United States and Arkansas Constitutions.[2]

McDonald's sole point on appeal is that the circuit court erred in refusing to suppress evidence seized by police on his property without a warrant. When reviewing a circuit court's denial of a motion to suppress, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003).

---

[2] We note that this court typically interprets Article 2, section 15, of the Arkansas Constitution in the same manner that the United States Supreme Court interprets the Fourth Amendment. *See, e.g., Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998); *Stout v. State,* 320 Ark. 552, 898 S.W.2d 457 (1995). We recognize that recently this court has, in certain limited circumstances, imposed greater restrictions on police activities in Arkansas, based upon Article 2, section 15, than those the United States Supreme Court holds to be necessary under federal constitutional standards. *See, e.g., Griffin v. State,* 347 Ark. 788, 67 S.W.3d 582 (2002) (nighttime search); *State v. Sullivan,* 348 Ark. 647, 74 S.W.3d 215, (2002) (pretextual arrest). In the instant case, McDonald does not ask this court to extend protection beyond the federal standards. As such, we will analyze the search and seizure here under a rubric consistent with both state and federal law.

McDonald's argument is supported by a three-prong attack on the validity of the officers's actions. First, he contends that locating and recording serial numbers from off-road vehicles is a seizure. Next, he maintains that the search was not validated by the plain-view doctrine because the incriminating character of the evidence was not immediately apparent. Finally, he argues that his driveway and front yard are part of the curtilage of his home at 304 Blue Hole Road.

### Expectation of Privacy

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV; see also Ark. Const. art. 2, § 15. The Supreme Court has set forth a two-part test for determining whether the Fourth Amendment protection against an unreasonable search applies in a specific situation. See Katz v. United States, 389 U.S. 347 (1967) (Harlan, J., concurring). First the court must determine if the petitioner exhibited a subjective expectation of privacy, and, second, the court must determine if that expectation is objectively reasonable. Walley v. State, 353 Ark. 586, 112 S.W.3d 349 (2003). Whether the defendant has asserted or manifested a subjective expectation of privacy is a question of fact. Rainey v. Hartness, 339 Ark. 293, 5 S.W.3d 410 (1999). Determining if a subjective expectation of privacy is objectively reasonable is a question of law. Id.

One's dwelling and curtilage have consistently been held to be areas that may normally be considered free from government intrusion. Sanders v. State, 264 Ark. 433, 572 S.W.2d 397 (1978). Driveways and walkways used to approach a residence are portions of the curtilage as traditionally defined; however, the expectation of privacy in such areas is not generally considered reasonable. Walley v. State, supra (citing Katz v. United States, 389 U.S. 347 (1967); United States v. Magana, 512 F.2d 1169 (9th Cir. 1995)). Whether an area outside one's home is private as opposed to public, for purposes of the Fourth Amendment, is not controlled by the common law of property. Walley v. State, 353 Ark. 586, 112 S.W.3d 349 (2003) (citing United States v. Santana, 427 U.S. 38 (1976)). Indeed, what a person knowingly exposes to the public is not a subject of Fourth Amendment protection. Id.

■ When Corporal Burlison was standing in the driveway, and thus in the curtilage of McDonald's home, he looked at the mule and took down its VIN number. McDonald, however, had no reasonable expectation of privacy in the driveway. *See Walley v. State, supra.* The mule was exposed to the public and readily accessible to any person walking to the front door of his home. Nothing barred the public from walking up the driveway. As such, we hold that McDonald did not exhibit a reasonable expectation of privacy in his driveway.

### Warrantless Search

■ Even if the police officers were lawfully in his driveway, McDonald maintains they illegally searched the mule and seized its VIN number. A warrantless search is *per se* unreasonable unless it falls within one of the narrow and clearly defined exceptions to the warrant requirement. *Flippo v. West Virginia,* 528 U.S. 11 (1999); *Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998). The plain-view doctrine is one of the well delineated and established exceptions to the warrant requirement. *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656 (1989); *Fultz v. State, supra.* We have held that a search occurs whenever something not previously in plain view becomes exposed to an investigating officer. *Norris v. State,* 338 Ark. 397, 993 S.W.2d 918 (1999) (citing *Arizona v. Hicks,* 480 U.S. 321 (1987)). In addition, the police need not inadvertently discover evidence in order to invoke the plain-view doctrine. *Fultz v. State, supra.* The Supreme Court has stated that intrusion into an area cannot result in a Fourth Amendment violation unless the area is one in which there is a "constitutionally protected reasonable expectation of privacy." *New York v. Class,* 475 U.S. 106 (1986) (quoting *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516 (1967) (Harlan, J., concurring)). The Court held in that case that there was no reasonable expectation of privacy in a VIN number, and, therefore, the mere viewing of a VIN number was not a violation of the Fourth Amendment. *New York v. Class, supra.*

■ As stated earlier, McDonald did not exhibit a reasonable expectation of privacy in his driveway. In addition, we have explained that the procedure known as a "knock-and-talk" is constitutionally sound. *See, e.g., Latta v. State,* 350 Ark. 488, 88 S.W.3d 833 (2002). During a "knock-and-talk," a police officer

may approach a person's residence to ask questions related to an investigation without probable cause or reasonable suspicion. *Id*. It follows that, in this case, the police were lawfully and legitimately in the driveway when they inspected the mule.

 Once the officer was in the driveway, he could see the VIN number on the mule; that is, the VIN number was in plain view. *See New York v. Class*, 475 U.S. 106, 106 S.Ct. 960 (1986). A cursory inspection, which involves merely looking at an object already exposed to view, is not a "search" for Fourth Amendment purposes. *Arizona v. Hicks, supra; see also New York v. Class, supra*. Here, the officer stated that the VIN number was stamped on the outside of the mule and could be viewed without touching the vehicle. Accordingly, we conclude that the inspection of the mule was not an illegal "search" in contravention of the Fourth Amendment. *See New York v. Class, supra*.

### Warrantless Seizure

 As another alternative argument, McDonald suggests that, even if Corporal Burlison lawfully viewed the mule's VIN number, the recording of the VIN number was an unlawful seizure. We disagree. McDonald cites *United States v. Sokolow*, 450 F.2d 324 (5th Cir. 1971), *State v. Wilson*, 279 Md. 189, 367 A.2d 1223 (1977), and *State v. Murray*, 8 Wash.App. 944, 509 P.2d 1003 (1973), in support of his argument. To the extent that the cited cases support McDonald's proposition, they have been abrogated by the Supreme Court's decision in *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, the Supreme Court held that no "seizure" occurs for purposes of the Fourth Amendment where officers merely record serial numbers observed in plain view. *Arizona v. Hicks, supra*. Likewise, no "seizure" took place in this case when Corporal Burlison recorded the mule's VIN number.

 When police officers are legitimately at a location and acting without a search warrant, they may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of a crime, or an instrumentality of a crime. *Fultz v. State, supra; Arizona v. Hicks, supra*. Because no seizure took place when Corporal Burlison recorded the mule's VIN number, he did not need to have probable cause to believe that the mule was the fruit of a crime *before* recording its VIN

number. We have already determined that the officers were lawfully in the driveway and that the mule's VIN number was plainly visible. Thus, we hold that Corporal Burlison lawfully recorded the VIN number on the mule located in the driveway.

### "Inevitable Discovery" Doctrine

McDonald advances a similar search-and-seizure challenge in connection with Sergeant Jones's actions in recording the VIN number on the red four-wheeler parked in the front yard. We need not, however, address the propriety of those warrantless activities because the lawful discovery that the mule was stolen would have inevitably led to the discovery that the red four-wheeler was also stolen. Stated another way, even if we were to conclude that McDonald's constitutional rights were violated, the circuit court's denial of his motion to suppress would still be affirmed pursuant to the "inevitable discovery" doctrine. *See, e.g., Thompson v. State,* 333 Ark. 92, 966 S.W.2d 901 (1998).

We have held that suppressed evidence is otherwise admissible if the State proves by a preponderance of the evidence that the police would have inevitably discovered the evidence by lawful means. *Miller v. State,* 342 Ark. 213, 27 S.W.3d 427 (2000). In 1988, this court adopted the Supreme Court's rationale in upholding the "inevitable discovery" doctrine:

> This court cited *Nix* with approval in *Mitchell v. State,* 294 Ark. 264, 742 S.W.2d 895 (1988), where we stated, "[t]he state must prove the 'inevitable discovery' would have occurred by a preponderance of the evidence." We find the standard adopted by the Supreme Court in 1984 well suited to the task of securing the goals of the exclusionary rule while assuring that the police are not placed in "a *worse* position than they would have been in if no unlawful conduct had transpired." *Nix v. Williams,* 467 U.S. 431, 445, 104 S.Ct. 2501, 2509-2510 (1984).

*Brunson v. State,* 296 Ark. 220, 226, 753 S.W.2d 859, 861 (1988).

We concluded in *Miller* that, even if the police officers' conduct in entering the rear of the defendants' residence after getting no response at the front door resulted in an illegal search, it was proper for the trial court to deny the defendants' motion to suppress evidence seized from their home under the

"inevitable discovery" doctrine, where an officer who was standing in a parking lot next to the defendants' residence observed marijuana growing in their backyard. *Miller v. State, supra.* Similarly, in this case, the police lawfully recorded the VIN number on the stolen mule parked in the driveway. That information alone would have provided sufficient probable cause to procure the search warrant. Armed with a valid search warrant, the officers would have recorded the VIN number from the red four-wheeler and discovered that it was stolen. We are convinced that the State has established by a preponderance of the evidence that the police would have inevitably discovered the evidence by lawful means.

Affirmed.

THORNTON, J., not participating.