

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-14-317

| | |
|---|---|
| DONALD LYNN JONES<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** November 12, 2014<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63CR-13-170]<br><br>HONORABLE BOBBY MCCALLISTER, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's judgment entered on January 6, 2014. Following the court's denial of his motion to suppress, pursuant to Arkansas Rule of Criminal Procedure 24.3(b), appellant entered a conditional plea of no contest to theft by receiving and possession of a firearm by certain persons. He was concurrently sentenced as a habitual offender on both charges to ten years' imprisonment in the Arkansas Department of Correction. On appeal, appellant's sole argument is that the circuit court erred in denying his motion to suppress. We affirm.

On January 7, 2013, Detective Ron Parsons, Detective Corporal Gary Robertson, and two patrol deputies, all of the Saline County Sherriff's Department, went to appellant's home to complete a "knock and talk" after learning of a report that appellant was involved in thefts of "utility-type copper" from electrical poles along Highway 35 through the city of Benton and into Grant County. They used a drive which encircled

appellant's home to access the property, parking on the side of the home. There was no fence around the home. Upon exiting their vehicle, Detective Parsons saw a burned-out black spot in the backyard about fifteen to twenty yards away that still contained burned copper. In the area around the burned-out black spot, he saw five- to six-feet sections of ground wire, typically used by utility companies, stacked on top of each other in piles.

Both Detective Parsons and Corporal Robertson then heard voices in a "shop building" nearby. They made contact with two persons at the shop building, thinking one of them was appellant. Both ran but were apprehended. Neither was appellant.

They then made contact with Jacqueline Prevatt, appellant's girlfriend. She advised that appellant was not at the home. Corporal Robertson did a sweep of the premises to ensure that appellant was not there.[1] He exited the premises upon finding that appellant was not there. The officers then began their investigation. Having also seen ground wire on the ground near the burned-out black spot, Detective Parsons went over to further inspect it. From that place, he saw a boat that contained tools in plain view that he immediately recognized as stolen utility-contractor tools due to the inspection stickers on them.[2]

---

[1] There was contradictory testimony with regard to whether Prevatt gave Corporal Robertson permission to enter the home. We note that *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004), deals with the issue of consent during a "knock and talk." Appellant summarily states that "[n]one of the officers presented a warrant nor did they get consent to search the premises." Beyond this, no further argument regarding consent of supporting authority is made. Accordingly, the issue of consent is not before this court.

[2] Detective Parson called First Electric, which sent out a representative who identified some of the stolen tools as belonging to First Electric and some as being stolen from one of their subcontractors, Highliners Construction. After photographing the stolen tools, Detective Parsons returned the stolen tools to their owners.

Pursuant to an affidavit detailing the evidence observed on January 7, 2013, a warrant was issued on February 15, 2013. Detective Parsons participated in the execution of that warrant on the same date. The search pursuant to that warrant uncovered varying amounts of copper in various forms, various utility tools, and a .22 caliber revolver.

On April 8, 2013, appellant was charged by criminal information, as a habitual offender, with theft by receiving and possession of a firearm by certain persons.[3] On August 8, 2013, appellant filed a motion to suppress physical evidence obtained on January 7, 2013. On October 10, 2013, appellant filed a motion to suppress physical evidence obtained on February 15, 2013. By letter opinion filed November 4, 2013, the circuit court denied both of appellant's motions to suppress.

Appellant entered a conditional plea of no contest as a habitual offender to theft by receiving and possession of a firearm by certain persons, reserving his right to appeal the court's denial of his motion to suppress. He was concurrently sentenced as a habitual offender on both charges to ten years' imprisonment in the Arkansas Department of Correction. This timely appeal followed.

Appellant argues that officers violated his constitutional rights to be free from unlawful search or seizure under the Fourth Amendment and Article 2, section 15 of the Arkansas Constitution, when they entered the curtilage of his home without a warrant or a justifiable exception to a warrant on January 7, 2013. He asserts that all evidence obtained from the January 7, 2013 search, and all evidence obtained from the February 15,

---

[3] Appellant was also charged with use or possession of paraphernalia to manufacture, etc., methamphetamine/cocaine; however, that charge was nolle prossed.

2013 search made pursuant to a warrant obtained based on information learned during the allegedly unlawful January 7, 2013 search, should have been suppressed. Accordingly, he asserts that the circuit court erred in denying his motion to suppress. The State argues that the officers were in an area in which appellant did not have a reasonable expectation of privacy when they seized items that were in plain view and evidenced criminal conduct; therefore, the circuit court did not err in denying appellant's motion to suppress.

## I.    *Standard of Review*

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court.[4] The appellate court defers to the superior position of the circuit judge to pass upon the credibility of witnesses.[5] It will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence.[6]

## II.    *Curtilage*

Appellant argues that Detective Parsons and Corporal Robertson were unlawfully in the curtilage of his home and would not have seen the wires had they not been in a

---

[4] *King v. State*, 2014 Ark. App. 81, at 8, 432 S.W.3d 127, 132 (citing *Davis v. State*, 2013 Ark. App. 658, 430 S.W.3d 190).

[5] *Id.*

[6] *Id.*

place where they were not supposed to be. The Fourth Amendment of the United States Constitution and Article 2, section 15 of the Arkansas Constitution identically protect "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and the touchstone of analysis under both is whether a person has a reasonable expectation of privacy in the area entered or searched.[7] One's dwelling and curtilage have consistently been held to be areas that may normally be considered free from government intrusion.[8] The curtilage of a dwelling-house has been defined by this court as a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment.[9]

Four factors identify the extent of the privacy expectation in the curtilage of a residence: the proximity of the area claimed to be curtilage to the home; whether the area is included within an enclosure surrounding the home; the nature of the uses to which the area is put; and the steps taken by the resident to protect the area from observation by people passing by.[10] While dwellings and their curtilage generally are protected, an expectation of privacy in driveways and walkways, which are commonly used by visitors

---

[7] *Percefull v. State*, 2011 Ark. App. 378, at 6, 383 S.W.3d 905, 909 (citing *McDonald v. State*, 354 Ark. 216, 119 S.W.3d 41 (2003)).

[8] *McDonald v. State*, 354 Ark. 216, 222, 119 S.W.3d 41, 45 (2003) (citing *Sanders v. State*, 264 Ark. 433, 572 S.W.2d 397 (1978)).

[9] *Gaylord v. State*, 1 Ark. App. 106, 109, 613 S.W.2d 409, 411 (1981).

[10] *Percefull*, 2011 Ark. App. 378, at 5, 383 S.W.3d at 909 (citing *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134 (1987)).

to approach dwellings, generally is not considered reasonable.[11] What a person knowingly exposes to the public is not a subject of Fourth Amendment protection.[12]

Detective Parsons testified that appellant's home was encircled by a "well-used," unpaved drive. Prevatt agreed that the unpaved area was a circle drive. There was no fence, gate, or other access-restricting structure at any place around the residence.[13]

Furthermore, with regard to the officers "choice" to go to the back door, Detective Parsons testified that he had been to appellant's residence "at least a couple of times previously" in his official capacity and that he had "always had someone go to the front but [they] never got a response from the front[,]" so they then "always went to the back." Prevatt testified that "most of the time [the residents of the home entered] the house from the back door[,]" though "[p]eople use both doors." If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.[14] Accordingly, while the circle drive was within the curtilage of the home, we hold that appellant had no reasonable expectation of privacy in the circle drive.

---

[11] *Id.*

[12] *McDonald*, *supra* (citing *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003) (citing *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976)).

[13] There was some incomplete fencing at the rear of the nearby shop building, but it did not restrict access.

[14] *Lancaster v. State*, 81 Ark. App. 427, 432, 105 S.W.3d 365, 432 (2003) (*Burdyshaw v. State*, 69 Ark. App.243, at 248, 10 S.W.3d 918, at 921 (quoting *Oregon v. Corbett*, 15 Or. App. 470, 516 P.2d 487, 490 (1973)).

### III.    *Plain View*

As a general rule, all searches conducted without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant.[15] The burden is on the State to establish an exception to the warrant requirement.[16] The observation of evidence in plain view is not a search, and therefore the resulting seizure is not the result of an unreasonable search.[17]

Under the plain-view doctrine, "[w]hen police officers are legitimately at a location and acting without a search warrant, they may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of a crime, or an instrumentality of a crime."[18] The plain-view doctrine is applicable if the officer has a lawful right of access to the object and if the incriminating nature of the object is readily

---

[15] *McDonald v. State*, 92 Ark. App. 1, at 3, 210 S.W.3d 915, 917 (2005) (citing *Kirk v. State*, 38 Ark. App. 159, 832 S.W.2d 271 (1992)).

[16] *Id.* (citing *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); and *Izell v. State*, 75 Ark. App. 377, 58 S.W.3d 400 (2001)).

[17] *Magness v. State,* 2012 Ark. App. 609, at 12, 424 S.W.3d 395, 403 (citing *Washington v. State*, 42 Ark. App. 188, 192, 856 S.W.2d 631, 633 (1993)).

[18] *Newton v. State*, 366 Ark. 587, 590, 237 S.W.3d 451, 453 (2006) (citing *Fultz v. State*, 333 Ark. 586, 593, 972 S.W.2d 222, 224–25 (1998) (citing *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987))).

apparent.[19] Significantly, even if the police did not inadvertently discover the object, the seizure does not violate the Fourth Amendment.[20]

Detective Parsons and Corporal Robertson went out to appellant's residence to speak with him about his being named as being involved with copper thefts. From the position at which Detective Parsons and Corporal Robertson legally parked, Detective Parsons testified that he could see "pieces of copper in a burnt area" and "piles" of "five to six-foot long" sections of utility-type electrical wiring stacked nearby. He said the piles were about "15–20 yards away[.]" Detective Parsons testified to prior knowledge that the stolen electrical wires had been cut in "approximately five to six-foot sections." He also testified that he had investigated copper thefts "many times[,]" estimating that he had worked "80–100 cases" in five years. Based on Detective Parsons' history of investigating copper theft cases, the presence of copper wires in the burned-out black spot, and the open storage of copper wires that had lengths equal to the lengths of the copper wires known to police to have been stolen from electricity poles, we find that he had probable cause to believe the copper was evidence in the copper thefts he was investigating.

## IV. *Conclusion*

The officers in the case were lawfully in an area of the curtilage of appellant's home wherein he had no reasonable expectation of privacy when they saw utility grade copper wiring which was readily apparent to them as evidence of the criminal conduct they were

---

[19] *Id.* (citing 237 S.W.3d at 453 (citing *Williams v. State*, 327 Ark. 213, 939 S.W.2d 264 (1997)).

[20] *Fultz v. State*, 333 Ark. 586, 593, 972 S.W.2d 222, 225 (1999) (citing *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

investigating. Based on a review of the totality of the circumstances, the circuit court did not err in denying appellant's August 8, 2013 motion to suppress the physical evidence obtained on the day of the knock and talk. Because we hold that the circuit court properly denied appellant's August 8, 2013 motion to suppress, we hold that the court did not clearly err in denying appellant's October 10, 2013 motion to suppress the evidence obtained on February 15, 2013, where the evidence obtained on January 7, 2013, served as the basis for the warrant, the February 15, 2013 execution of which resulted in the additional evidence.

Affirmed.

WHITEAKER and HIXSON, JJ., agree

*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.