SLIP OPINION

Cite as 2015 Ark. App. 72

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR 14–430

| | |
|---|---|
| DARIN TATE<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** FEBRUARY 11, 2015<br><br>APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. CR 12-38-2]<br><br>HONORABLE CHARLES A. YEARGAN, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

On May 1, 2013, a Sevier County Circuit Court jury convicted Darin Tate of third–degree domestic battery. He was sentenced to six months in the county jail and fined $1,000. He was also convicted of possession of firearms by certain persons, and he was sentenced to six years' imprisonment in the Department of Correction and fined $10,000. This appeal followed. On appeal, Mr. Tate contends that his motion to suppress the evidence was improperly denied. We find no error and affirm.

On May 26, 2012, police responded to a call to Melissa Tate's home concerning a domestic disturbance. When police arrived, Mrs. Tate was at the neighbor's house with her daughter, Crystal Robinson, and her daughter's boyfriend, Brad Bennett. Mr. Tate was inside the home he shared with his wife. Police officers went to the neighbor's home to talk with Mrs. Tate. Shortly thereafter, Mr. Tate emerged from the house and was taken into custody

SLIP OPINION

without incident. Seven rifles were taken from the home.

A suppression hearing was held on January 10, 2013, to determine whether the evidence of the guns removed from the home was admissible. At the hearing, witnesses offered conflicting testimony, contradicting themselves and each other. From the bench, the trial judge denied the motion to suppress and stated that he found the law-enforcement officers' testimony more credible.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error, and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *King v. State*, 2014 Ark. App. 81, 432 S.W.3d 127. The court of appeals defers to the superior position of the circuit judge to pass upon the credibility of witnesses when reviewing the denial of a motion to suppress evidence. *Jones v. State*, 2014 Ark. App. 649, 448 S.W.3d 214 (2014). We will reverse the denial of a motion to suppress evidence only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*

A warrantless entry into a private home is presumptively unreasonable under the Fourth Amendment. *Burroughs v. State*, 96 Ark. App. 289, 241 S.W.3d 280 (2006). However, the presumption of unreasonableness may be overcome if the law-enforcement officer obtained the consent of the homeowner to conduct a warrantless search. *Id.* Arkansas Rule of Criminal Procedure 10.1 (2005) defines a search as:

any intrusion other than an arrest, by an officer . . . upon an individual's person, property, or privacy, for the purpose of seizing individuals or things or obtaining information by inspection or surveillance, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or violation of the individual's rights under the Constitution of the United States or this state.

In reviewing the trial court's findings of fact for clear error, and giving deference to the trial court's ability to judge the credibility of the witnesses, we hold that the trial court's ruling denying the motion to suppress was not clearly against the preponderance of the evidence. More particularly, as discussed below, we find no error in the trial court's conclusion that the police had consent to search.

The issue of the removal of the guns from the home elicited conflicting testimony from the witnesses. The first mention of Mr. Tate's guns occurs on the recorded 911 call from Mrs. Tate. In her testimony, she admits that she said to the 911 dispatcher, "I said, 'He's probably hiding his guns. He's a damn felon.' That's exactly what I said.'" Contradicting herself, she testified at the hearing that she did not tell the police that there were guns in the house, and that she told Mr. Bennett that the guns all belonged to her. The law-enforcement officers and Ms. Robinson testified that Mrs. Tate wanted the guns removed from the home because she was afraid of her husband and his brother and that she requested Sheriff Stringfellow come in the house with her to help her remove her husband's guns. Sheriff Stringfellow also recalled in his testimony that Mrs. Tate explained to him that Mr. Tate had bought the guns at a flea market because that was the only place he could buy guns.

Mr. Tate moved to suppress the evidence of the removal of the guns from his home

SLIP OPINION

and alleged the evidence was the result of an illegal search and seizure. To support his contention, he argued that law-enforcement officers entered his home without consent and conducted a search for the guns. Mrs. Tate testified at the hearing. She insisted that she did not invite officers into her home and did not assist in the guns' removal. Mrs. Tate alleged that law-enforcement officers entered her home without her permission and upended the home searching for the guns. She testified that on the day of her husband's arrest she said to her daughter's boyfriend, Brad Bennett, that the rifles belonged to her and that she did not want them removed.

Other witnesses directly contradicted her testimony at the hearing. Sheriff Stringfellow testified that he and two other officers conducted only a security sweep of the house, which "took less than a minute," because of Mrs. Tate's concern that Mr. Tate's brother was inside the house and she was afraid of him. He testified they did not search the home for weapons, and only made sure the brother was not in the house. Sheriff Stringfellow then testified that Mrs. Tate refused to go back in the house to retrieve the guns that she wanted out of the house unless someone went in the house with her and requested that Sheriff Stringfellow accompany her. Sheriff Stringfellow testified that Mrs. Tate did all of the searching and that he only carried the four guns she found. He left the house and then waited for her to come out, and when she did she was carrying three more guns.

At the hearing, Mrs. Tate denied ever telling law enforcement that she had been physically abused:

> Q: You don't remember telling him [Officer Davignon] that he started hitting you in the chest and grabbed your hair and tried pulling you inside the house?
> A: No sir, I didn't.
> Q: So if he says you said that he's lying?
> A: Yes, sir, he is.

Officer Bryan Hankins took the stand and testified that Mrs. Tate told him that her husband was drunk and began hitting her and attempted to pull her back inside the house where he grabbed her hair and hit her in the chest. Photographs taken at the scene show her disheveled hair and a reddened area on her chest and arm. She said that she had sustained the red marks and other injuries through yard work and that she had a birthmark on her chest.

Mrs. Tate testified that she never spoke to Sheriff Stringfellow at all, but that Ms. Robinson and Mr. Bennett did. However, Sheriff Stringfellow did not remember talking to Ms. Robinson and instead, testified that Mrs. Tate told him that her husband had struck her, that she talked about his guns, and that she was "hysterical" and afraid.

There was a great deal of conflicting testimony concerning a written statement about the events of the evening leading up to Mr. Tate's arrest and the removal of the guns. Ms. Robinson testified at the hearing, supporting the version of events of the law-enforcement officers. She testified that her mother was shaking too badly to write a statement of the events of that evening for herself, so she wrote as her mother dictated her statement to the police that evening. In just moments after this testimony, however, she contradicted her own statement, claiming the statements were in her mother's handwriting, so they must have been written by Mrs. Tate. A signed, notarized statement from Ms. Robinson dated May 31, 2012, was

5

SLIP OPINION

admitted into evidence and indicated that she wrote the statement for her mother.

In contrast, Mrs. Tate testified that her daughter wrote out the statements, but that she had no idea what they said when she signed them, because she neither read them, nor were they read to her. Mrs. Tate did admit writing a second statement, but claimed that she was under threat of arrest if she did not. The original written statement and Ms. Robinson's testimony support the law-enforcement officers' version of events that Ms. Tate was the frightened victim of domestic abuse, called the police, and asked for help removing her husband's guns from the home. Except for the aberration about who wrote the statement, Ms. Robinson maintains the same version of the events from that evening.

The trial court found the law-enforcement officers' and supporting testimony from Ms. Robinson credible concerning the matter of consent to enter the home. The trial court stated, "[E]verything that was done by the sheriff's department . . . appears to be consistent with what Mrs. Tate said at the time and not what she said today." We find no error and affirm.

## I. *Refusing Consent*

The Arkansas Constitution provides protection against unreasonable searches and seizures. The Arkansas Supreme Court held in *State v. Brown* that homeowners must not only give consent to search, they must be informed of their right to refuse consent to search. 356 Ark. 460, 156 S.W.3d 722 (2004). On appeal and for the first time, Mr. Tate raises the argument that his wife was never informed of her right to refuse consent to search. Therefore,

he waived the argument by not raising it below, and the argument is foreclosed to him. The supreme court stated its reasoning for this rule in *Hill v. State*: "Because arguments raised for the first time on appeal could not have been considered by the lower court, they will not be addressed by this court." 2014 Ark. 420, at 3 (per curiam). Thus, we are barred from considering this argument.

We affirm.

GLADWIN, C.J., and HIXSON, J., agree.

*The Law Office of Darrell F. Brown, Jr.*, by: *Darrell F. Brown, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.