Cite as 2021 Ark. App. 426

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-20-735

| | | |
|---|---|---|
| JERVONTAE COX | | **Opinion Delivered** November 3, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCR-19-287] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE CINDY THYER, JUDGE |
| | | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Jervontae Cox was convicted by a Mississippi County jury of murder in the first degree and tampering with physical evidence in the death of Kevondre Williams. He was sentenced to thirty-five years for the murder conviction and twelve years for the tampering conviction, with the sentences to be served concurrently. On appeal, Cox argues that (1) there was insufficient evidence to support his conviction for first-degree murder, and (2) the circuit court erred in denying his motion to suppress. We affirm.

On August 19, 2019, Williams's body was found in a ditch by a City of Blytheville worker when the worker hit it while brush hogging the side of the road. The body was wrapped in trash bags, a comforter, and red carpeting. Williams had been tied up with shoelaces and shot in the head, and there were bleach stains on his clothing. His body was in an advanced state of decomposition.

Williams's mother, Erica Bailey, last saw her son alive on the morning of August 13, 2019, when she dropped him off at the Byrum Road Apartments in Blytheville shortly before 11:00 a.m., where Cox lived in apartment D-4. Williams texted his grandmother, Linda Bailey, later on August 13 and asked her to come pick him up at the same location; although she went to the apartments, Williams never came out to meet her. Linda returned to the Byrum Road Apartments on August 19 and knocked on the door of apartment D-4; a man she identified at trial as Cox answered the door, and when she asked if he knew Williams, he said he did not. Erica filed a missing-person report for Williams on the same day.

Blytheville police detectives went to apartment D-4 on August 23 to speak with Cox's grandmother in an attempt to obtain permission to search the residence. After knocking on the door and receiving no answer, Captain John Frazier noticed a spot of blood on the wall of the front porch. The area was secured, and a search warrant was obtained for the apartment. The search of the apartment, which smelled strongly of bleach, revealed bleach stains on an air mattress; a mop, cleaning supplies, and black trash bags with receipts for the purchases; a pillow sham matching the comforter Williams was found wrapped in; and a rubber sheet soaking in bleach water in the bathtub. There was a bullet hole in the dining-area drywall. Outside in the field next to the apartment, officers found carpet similar to the carpet that had been wrapped around Williams's body. A search of the dumpster outside the apartment yielded more evidence, including black garbage bags similar to the ones found inside the apartment that contained stained, wet washcloths that smelled of bleach and had bleach stains on them and a bleach bottle. The trash bags contained flies and

2

maggots, which, according to the testimony of the crime lab technician, were similar to the ones found on Williams's body.

The receipts found in the apartment documented purchases from Dollar General and Wal-Mart. The officers obtained August 18 surveillance video from Dollar General, which was in walking distance of Cox's apartment; and August 19 surveillance video from Wal-Mart, which showed Cox purchasing cleaning supplies and new washcloths.

While posting missing-person flyers around August 15 near the Byrum Road Apartments, Ayanna Thomas saw a newer model, dark-colored four-door car with the trunk open in front of one of the apartment buildings. Detectives learned that the girlfriend of one of Cox's codefendants had been loaned two cars from a local dealership. Upon inspection of the vehicles, DNA consistent with Williams's DNA profile was found on the inside knob in the trunk of one of the vehicles.

Detectives were able to obtain Williams's iPhone cell phone number and determined that the last live ping from Williams's cell phone, which was not found with Williams's body, had been on August 14 around 5:30 a.m., and it had pinged off a tower directly southeast of where Williams's body was found. Cox's apartment was approximately one-eighth of a mile from where Williams's body was located, and the cell tower where Williams's phone last pinged could be seen from Cox's apartment. A nonworking iPhone was found inside the apartment.

Cox first challenges the sufficiency of the evidence to support his conviction for first-degree murder. A person commits murder in the first degree if he or she, with the purpose of causing the death of another person, causes the death of another person. Ark. Code Ann.

3

§ 5-10-102(a)(2) (Supp. 2021). Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Warren v. State*, 2020 Ark. App. 263, 600 S.W.3d 123. When reviewing the denial of a directed-verdict motion, the appellate court views the evidence in the light most favorable to the State, considering only the evidence that supports the judgment or verdict, and will affirm if there is substantial evidence to support the verdict. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *West v. State*, 2020 Ark. App. 522. Witness credibility is an issue for the jury; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Atwood v. State*, 2020 Ark. 283.

Cox's counsel moved for a directed verdict at the close of the State's evidence, arguing that the evidence was "very insufficient" that Cox had anything to do with the death of Williams because it did not place Williams in the apartment at any time; there was no blood or DNA from Williams in the apartment; no gun was found; and Cox had no opportunity or motive to commit the crime. Counsel argued that, at most, the State had proved that the apartment had been cleaned, but the State could not tie Williams's death back to Cox. The circuit court denied Cox's directed-verdict motion.

Cox called one witness in his defense. After her testimony, Cox's attorney stated, "Again, Judge, renew all of our objections from pretrial motions." The circuit court reiterated that defense counsel was renewing his pretrial motions and then stated that "with

4

respect to a motion for directed verdict, it will, likewise be denied. And the record does reflect that you are renewing your previous motions."

We hold that Cox's sufficiency argument is not preserved for appellate review. Rule 33.1(a) of the Arkansas Rules of Criminal Procedure requires that directed-verdict motions in a jury trial be made at the close of the State's evidence and at the close of all the evidence, and such motions shall state the specific grounds therefor. The failure to challenge the sufficiency of the evidence in this manner and at the proscribed times waives any question pertaining to the sufficiency of the evidence to support the verdict. Ark. R. Crim. P. 33.1(c). Rule 33.1 is to be strictly construed. *Thomas v. State*, 2020 Ark. 307.

In *Jones v. State*, 318 Ark. 704, 889 S.W.2d 706 (1994), Gary Jones was convicted of first-degree murder, and his codefendant, Jimmy David Hedge, was convicted of second-degree murder in the death of James Sims, Jr. At the close of the State's case, attorneys for both Hedge and Jones made specific directed-verdict motions. At the close of all the evidence, Jones's attorney asked that his directed-verdict motion be shown as renewed, and Hedge's attorney merely said, "Judge?" at which time the circuit court stated, "Show motion for directed verdict on behalf of Hedge and on behalf of Jones renewed and denied." *Jones*, 318 Ark. at 711, 889 S.W.2d at 709. Our supreme court held that Hedge's sufficiency argument was not preserved for appellate review because his attorney failed to renew his motion for directed verdict, even though the circuit court had directed that it be shown that the motion for directed verdict for Hedge was renewed and denied.

In the present case, at the close of all the evidence, Cox's attorney asked that all of the objections from pretrial motions be renewed. There was never a request to renew his

5

motion for directed verdict. Even though the circuit court stated at the close of all the evidence that Cox's motion for directed verdict would be denied, in accordance with *Jones*, because Cox never moved to renew his directed-verdict motion at the close of all the evidence, his sufficiency argument is not preserved.

In his second point on appeal, Cox argues that the circuit court erred in denying his motion to suppress. Cox asserts that the front porch of his apartment where Captain Frazier claimed to have seen the speck of blood in plain view constituted curtilage, and Frazier violated his Fourth Amendment right against unreasonable searches and seizures when he searched the porch; the speck of blood was tiny and only a few inches off the ground, so it was not believable that Frazier saw it in passing; and blood is not contraband. Cox's arguments are unpersuasive.

When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error, and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Cagle v. State*, 2019 Ark. App. 69, 571 S.W.3d 47. The appellate court defers to the superior position of the circuit court to pass on the credibility of witnesses. *Jones v. State*, 2014 Ark. App. 649, 448 S.W.3d 214. A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Shoulders v. State*, 2020 Ark. App. 235, 598 S.W.3d 77. The circuit court's ruling is reversed only if it is clearly against the preponderance of the evidence. *Deloney v. State*, 2021 Ark. App. 617 S.W.3d 717.

According to Captain Frazier's testimony at the suppression hearing, he went to Cox's apartment in an attempt to speak with either Cox or Cox's grandmother. He approached the apartment door, stood on the porch, and knocked. When no one answered the door, he turned to leave, and it was then that he noticed a speck of blood near the ground on the porch wall. This information regarding the blood was included in the affidavit for a search warrant for Cox's apartment, which yielded other evidence in the investigation of Williams's death.

We first address Cox's argument that the front porch of his apartment is curtilage and that Frazier's discovery of blood on the front porch without a search warrant constituted an unreasonable search and seizure. It has consistently been held that a person's dwelling and curtilage are areas that may be considered free from government intrusion. *Jones*, 2014 Ark. App. 649, at 5, 448 S.W.3d at 218. This court has defined the curtilage of a dwelling or house as "a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment." *Id*. While dwellings and their curtilage are largely protected, it is generally not considered reasonable to have an expectation of privacy in driveways and walkways, which are ordinarily used by visitors to approach dwellings; what a person knowingly exposes to the public is not protected by the Fourth Amendment. *Id*.

Cox cites *Florida v. Jardines*, 569 U.S. 1 (2013), in support of his argument that Frazier was conducting an unreasonable and warrantless search of his curtilage when he found the speck of blood on the wall of the front porch. In *Jardines*, the Supreme Court held that the act of police in taking a drug-sniffing dog onto the defendant's front porch to investigate whether drugs were present in the home without a warrant constituted an impermissible

search under the Fourth Amendment. However, the *Jardines* Court also noted that there is an implicit license that "typically permits [a] visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." 569 U.S. at 8. A police officer who does not have a warrant may approach a home and knock on the door because that is "no more than any private citizen might do." *Id.* (citing *Kentucky v. King*, 563 U.S. 452, 469 (2011)).

In the present case, Frazier walked onto the front porch of Cox's apartment and knocked on the door. When there was no answer, Frazier turned to leave, and he noticed the blood on the porch wall. Frazier's conduct in the present case comports with what the Supreme Court has defined as permissible conduct, in stark contrast with the actions the police officers took in *Jardines* by actively taking a drug dog onto the porch to search for drugs without a warrant and without permission from the homeowner.

We also reject Cox's assertion that it is not believable that Frazier saw the speck of blood on the porch wall as he turned to leave. This court does not assess the credibility of witnesses in a suppression hearing, and we do not weigh the evidence presented—that is the responsibility of the circuit court. *See Shoulders v. State*, 2020 Ark. App. 235, 598 S.W.3d 77. According to Frazier, the blood was in plain view on the porch. This court held in *Jones, supra*:

> The observation of evidence in plain view is not a search, and therefore the resulting seizure is not the result of an unreasonable search.
>
> Under the plain-view doctrine, "[w]hen police officers are legitimately at a location and acting without a search warrant, they may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of a crime, or an instrumentality of a crime." The plain-view doctrine is

applicable if the officer has a lawful right of access to the object and if the incriminating nature of the object is readily apparent.

2014 Ark. App. 649, at 7–8, 448 S.W.3d at 219 (quoting *Newton v. State*, 366 Ark. 587, 590, 237 S.W.3d 451, 453 (2006).

Cox argues that "blood is not contraband, or in and of itself, otherwise evidence of wrongdoing." While blood itself is not contraband, the Blytheville Police Department was conducting an investigation into Williams's murder; Williams was last seen alive at the apartment complex where Cox lived; Williams's cell phone last pinged on a cell tower visible from Cox's apartment; and Williams's body was found less than a mile from Cox's apartment. The spot of blood found on the front porch of Cox's apartment soon after Williams's body was found could be considered as evidence of possible wrongdoing.[1] The circuit court's denial of Cox's motion to suppress was not clearly erroneous, and we affirm.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*The Law Office of Geoffrey D. Kearney, PLLC*, by: *Geoffrey D. Kearney*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.

---

[1]While it was determined that the blood on the front porch did not belong to Williams, that has no effect on our analysis of Cox's Fourth Amendment argument.

9